Filed 4/15/13; pub. order & mod. 5/15/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PETER M. CASTLEMAN, et al., | F064590 |
| Plaintiffs and Respondents, | (Super. Ct. No. 11CECG03132) |
| v. | |
| HOWARD A. SAGASER, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County. Alan M. Simpson, Judge.

Griswold, LaSalle, Cobb, Dowd & Gin, Robert M. Dowd, Raymond L. Carlson, and Laura A. Wolfe, for Defendant and Appellant.

Manatt, Phelps & Phillips, Barry W. Lee, Christopher L. Wanger, and Benjamin G. Shatz, for Plaintiffs and Respondents.

-ooOoo-

This is an appeal from the denial of a special motion to strike under Code of Civil Procedure section 425.16, commonly known as the "anti-SLAPP statute."[1] The motion was filed by appellant Howard Sagaser as to claims for breach of fiduciary duty, breach of the duty of loyalty, conversion, and invasion of privacy asserted against him by respondents Peter Castleman, Central California Development Group, LLC, Selma Crossings, LLC, and Merced Gateway, LLC. The trial court concluded that the anti-SLAPP statute was not applicable to respondents' causes of action because the claims did not arise from constitutionally protected speech or petitioning activity, but rather from the alleged breach of an attorney's professional and ethical duties owed to former clients. We affirm the trial court's ruling.

## FACTUAL AND PROCEDCURAL BACKGROUND

Howard Sagaser is a licensed attorney and co-founder of the Fresno law firm previously known as Sagaser, Jones & Helsley (the "Law Firm").[2] He and attorney Timothy Jones were longtime shareholders and officers of the Law Firm. In October 2009, Sagaser resigned from the Law Firm under what respondents describe as acrimonious terms stemming from an internal dispute between Sagaser and his law partners, Jones in particular. The underlying details of that dispute are not relevant to this appeal.

Sagaser's resignation became effective October 29, 2009. On Saturday, October 24, 2009, Sagaser remotely accessed the Law Firm's document management system from his home computer and spent several hours reviewing materials pertaining to

---

[1] SLAPP is an acronym for "Strategic Lawsuit Against Public Participation." *(Oasis West Realty v. Goldman* (2011) 51 Cal.4th 811, 815, fn 1 *(Oasis West).)* Unless otherwise indicated, subsequent statutory references are to the Code of Civil Procedure.

[2] Presently known as "Wanger Jones Helsley, PC," the firm has changed names several times since its formation in 1994. We refer to the law firm generically to avoid confusion with individual attorneys Howard Sagaser and Timothy Jones.

2.

two groups of clients. Respondents comprised one group, while the other consisted of James Bratton and Bratton Investments, LLC (collectively "Bratton").

James Bratton and his affiliated entities had been clients of the Law Firm for several years. Timothy Jones served as counsel for Bratton and related entities in various real estate transactions, while Sagaser provided representation in labor and employment matters. Respondent Peter Castleman had been a client of the Law Firm since approximately 2003.

Many of the documents reviewed by Sagaser pertained to real estate transactions between the clients in 2007. Bratton had previously held ownership interests in undeveloped parcels of land located in the counties of Fresno and Merced. Through a series of transactions structured and facilitated by Timothy Jones, who served as counsel for the interested parties, Bratton entered into business ventures with Peter Castleman, Castleman's affiliated business entities, and others to develop these properties.

Respondent Selma Crossings, LLC, was formed to acquire, hold and develop real property previously owned by Bratton in Fresno County pursuant to the aforementioned business ventures. Respondent Merced Gateway, LLC, similarly acquired interests in the Merced County property. The role of respondent Central California Development Group, LLC is not entirely clear from the record, though respondents indicate it had a managerial function with regard to the projects in Merced County. All three entities became clients of the Law Firm in 2007.

Disclosure letters and waivers were provided to, and signed by, Bratton and Peter Castleman regarding potential conflicts of interest of Jones and the Law Firm in relation to the real estate development projects. As compensation for the transactional work, as well as his managerial role in several of the participating entities, the parties gave Jones a percentage ownership interest in the subject properties and business ventures. In 2008, Bratton reportedly sold its interest in the Merced County property and development

3.

project for $2,000,000 to one or more entities directly or indirectly owned by Castleman and/or Jones and others.

Soon after his October 24, 2009 review of materials on the Law Firm's computer system, Sagaser contacted attorney C. Russell Georgeson of the law firm Georgeson & Belardinelli. Sagaser also communicated with James Bratton. On more than one occasion, meetings were held between Mr. Georgeson, Mr. Bratton and Sagaser at Mr. Georgeson's law office.

On March 25, 2010, attorney Georgeson filed a complaint on behalf of Bratton against respondents, the Law Firm, Jones individually, and other defendants, which asserted multiple claims related to the 2007 transactions and business ventures. The lawsuit, *Bratton v. Jones*,[3] was filed in Mariposa County and later transferred to Fresno County. Among other allegations, Bratton claimed respondents, Jones, and others conspired and succeeded in defrauding it of its ownership interests in the Merced County property and development project, and induced Bratton to sell its stake for significantly less than fair market value (i.e., for $2,000,000 rather than the alleged value of $5,000,000). Bratton purportedly discovered the facts and circumstances surrounding defendants' alleged misconduct in October 2009.

Sagaser served a written demand for arbitration on Jones and the Law Firm in October 2010, which was later amended in August 2011. The demand alleged that unbeknownst to Sagaser, Jones obtained a 20% ownership interest in the 2007 business ventures between Bratton and respondents, which Jones later pledged as security for a non-recourse loan to him and his wife in the amount of $9,000,000. According to Sagaser, the 20% fee and all related proceeds should have gone to the Law Firm rather than to Jones personally, meaning Sagaser would be entitled to millions of dollars pursuant to his shareholder interest in the Law Firm at that time.

---

[3] *Bratton v. Jones, et al.* (Super. Ct. Fresno County, 2010, No. 10CECG02212).

Within weeks of serving his initial arbitration demand, Sagaser was subpoenaed to testify in *Bratton v. Jones*. He was deposed on November 15, 2010 and December 16, 2010. Sagaser asserted the attorney/client privilege throughout the deposition in response to questions regarding his communications with attorney C. Russell Georgeson and James Bratton in October 2009 and following his resignation from the Law Firm.

Respondents filed the current lawsuit on September 7, 2011. The complaint sets forth causes of action against Sagaser for breach of fiduciary duty, breach of the duty of loyalty, conversion, and invasion of privacy. Respondents allege, in pertinent part, that "Sagaser used confidential information of the Plaintiffs that Sagaser had obtained in connection with his firm's representation of the Plaintiffs (1) to encourage Bratton to bring a meritless action against Plaintiffs [i.e., *Bratton v. Jones*]; (2) to draft a complaint for Bratton against the Plaintiffs; and (3) to represent, to advise and to assist Bratton in his action against the Plaintiffs."

Sagaser is accused of "systematically reviewing, downloading, and printing" respondents' privileged and confidential file materials on multiple occasions without proper authorization or any legitimate purpose. The documents and/or confidential information were then provided to Bratton and attorney Georgeson without respondents' knowledge or consent. As a result, the pleadings in *Bratton v. Jones* allegedly contain "information that only an insider and former attorney like Sagaser could have known."

The complaint describes Sagaser's behavior in terms of ethical violations, including breaches of the duties of loyalty and confidentiality owed to respondents as former clients under the State Bar Rules of Professional Conduct. Sagaser allegedly acquired pecuniary interests adverse to respondents by representing or otherwise assisting their adversaries in *Bratton v. Jones* without respondents' consent. Respondents claim Sagaser committed the alleged acts of disloyalty in bad faith to carry out a personal vendetta against Jones and the Law Firm.

Sagaser filed a special motion to strike the complaint, i.e., an anti-SLAPP motion, pursuant to section 425.16. To invoke the statute, Sagaser argued that each cause of action arose from constitutionally protected speech and petitioning activity, namely his communications with attorney Georgeson and his deposition testimony in *Bratton v. Jones*. Sagaser also submitted a Declaration in which he denied any wrongdoing in connection with the *Bratton v. Jones* matter, and likewise denied transmitting respondents' confidential documents and/or information to any third parties.

The moving papers and supporting evidence contend Sagaser consulted with attorney Georgeson only to explore his personal rights and potential legal claims against Jones and the Law Firm. He eventually "came to the realization that the true victim was Mr. Bratton and the Bratton entities," and therefore "deferred pursuing [his] claims [because] the claims of Mr. Bratton were the primary claims and had priority." Although Sagaser continued to represent Bratton in other matters following his resignation from the Law Firm, he denied serving as its legal counsel in *Bratton v. Jones*. Sagaser admitted he reviewed a draft of the complaint in *Bratton v. Jones* at the request of Mr. Georgeson and Mr. Bratton, but only to confirm the accuracy of factual allegations pled against Jones and the Law Firm, not against the respondents.

Based on these arguments and attestations, Sagaser claimed the statutory burden shifted to respondents to show probable success on the merits of the case. Respondents opposed the motion, arguing that their causes of action did not arise from Sagaser's protected speech or petitioning activity, but rather his alleged ethical violations and breaches of fiduciary duties. Respondents relied upon several published cases in which the claims of former clients against their attorneys did not arise from protected activity within the meaning of section 425.16 even though the alleged misconduct occurred in the context of litigation. Respondents argued that these precedents were controlling and thus precluded Sagaser from carrying his threshold burden under the anti-SLAPP statute.

6.

The trial court denied the special motion to strike, agreeing with respondents that their claims did not arise from protected speech or petitioning activities under section 425.16. The court found that any statutorily protected activity by Sagaser, e.g., his litigation-related communications with attorney Georgeson, "was incidental to the alleged *un*protected conduct of assisting in representing Bratton and disclosing [respondents'] confidential and privileged information to Bratton and [Georgeson]." The order denying the special motion to strike was issued on February 22, 2012. Sagaser's timely notice of appeal followed.

## DISCUSSION

### Overview of the Anti-SLAPP Statute

The anti-SLAPP statute is designed to deter and quickly dispose of frivolous litigation arising from a defendant's exercise of the right of petition or free speech under the United States or California Constitution. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 311-312 (*Flatley*).) A defendant may respond to such claims by filing a special motion to strike pursuant to section 425.16, subdivision (b), within 60 days of service of the plaintiff's complaint. (§ 425.16, subd. (f).) This allows the trial court to evaluate the lawsuit at an early stage in a manner akin to summary judgment. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.) The granting of an anti-SLAPP motion results in dismissal of the claims on the merits and entitles the defendant to recover costs and attorney fees. (*Ibid*; § 425.16, subd. (c)(1).)

In ruling on a special motion to strike, the trial court follows a two-step analysis that involves shifting burdens. (*Smith v. Adventist Health System/West* (2010) 190 Cal.App.4th 40, 50.) The moving defendant carries the initial burden to show the challenged cause of action arises from protected free speech or petitioning activity. (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1387 (*Coretronic*).) The burden is satisfied by demonstrating that the conduct underlying the plaintiff's claim

7.

fits into a category of protected activity set forth in section 425.16, subdivision (e).**4**
(*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).)

If the court finds the defendant's threshold showing has been made, the burden shifts to the plaintiff to produce evidence establishing a probability of prevailing on the cause of action. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) To meet this burden, the plaintiff must plead and substantiate a legally cognizable claim for relief. (*Oasis West*, *supra*, 51 Cal.4th at p. 820.) "Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (*Ibid.*, internal quotation marks omitted.)

Only a "'minimum level of legal sufficiency and triability'" is needed to satisfy the second prong of the anti-SLAPP statute. (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 989.) The evidence favorable to the plaintiff is accepted as true, while the defendant's evidence is evaluated to determine if it defeats the plaintiff's claim as a matter of law, e.g., on grounds of privilege or immunity. (*Flatley*, *supra*, 39 Cal.4th at pp. 323, 326.) The motion will not be granted unless both prongs of the statute are established; the plaintiff's cause of action must arise from protected speech or petitioning and lack even a minimal degree of merit. (*Navellier*, *supra*, 29 Cal.4th at p. 89.)

---

**4** The categories are "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

**Standard of Review**

An order denying a special motion to strike under section 425.16 is immediately appealable. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).) Our review is de novo; we engage in the same two-step process as the trial court to determine if the parties have satisfied their respective burdens. (*Flatley, supra,* 39 Cal.4th at p. 325; *Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 266-267 (*Tuszynska*).) If the defendant fails to show that the lawsuit arises from protected activity, we affirm the trial court's ruling and need not address the merits of the case under the second prong of the statute. (*Tuszynska, supra*, 199 Cal.App.4th at p. 266.)

**Respondents' Causes of Action Do Not Arise From Protected Activity**

The sole inquiry under the first prong of the anti-SLAPP statute is whether the plaintiff's claims arise from protected speech or petitioning activity. (*Coretronic*, *supra*, 192 Cal.App.4th at p. 1389.) Our focus is on the principal thrust or gravamen of the causes of action, i.e., the allegedly wrongful and injury-producing conduct that provides the foundation for the claims. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*Cotati*); *Hylton v. Frank E. Rogozienski, Inc*. (2009) 177 Cal.App.4th 1264, 1272 (*Hylton*).) We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only "to determine what conduct is actually being challenged, not to determine whether the conduct is actionable." (*Coretronic*, *supra*, 192 Cal.App.4th at p. 1389.)

Section 425.16 is broadly construed to encompass a variety of pre-litigation and litigation-related activities. (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 822-824 (*Anapol*).) This does not mean, however, that Sagaser can carry his burden by highlighting the fact that he consulted a lawyer about matters involving the respondents and testified in a related lawsuit. A growing body of case law holds that actions based on an attorney's breach of professional and ethical duties owed to a client are not SLAPP suits, even though protected litigation activity features

prominently in the factual background. (See *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 702-703 [collecting and discussing cases arising from attorney malpractice and breach of fiduciary duties].)

In *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179 (*Benasra*), the Second District held that section 425.16 did not apply to former clients' claims against the defendant law firm and its individual lawyers for breach of the duty of loyalty. The plaintiffs alleged that defendants breached fiduciary duties owed to them by accepting representation of a subsequent client whose interests were adverse to the plaintiffs. Defendants filed an anti-SLAPP motion, arguing the lawsuit arose from statements made by the attorneys during the course of the subsequent representation. (*Id.* at p. 1186.)

As here, *Benasra* involved alleged violations of rule 3-310 of the State Bar Rules of Professional Conduct. (*Benasra*, *supra*, 123 Cal.App.4th at p. 1187.) Rule 3-310 generally prohibits representation or employment that conflicts with the interests of a client or former client, especially when the attorney has obtained confidential information that is material to the engagement. (Rules Prof. Conduct, rule 3-310(C) & (E).) The Second District found the gravamen of the action was not the defendants' exercise of the right of petition or speech, but rather their conflict of interest in representing the former clients' adversary. The court also noted that "a breach of [the] duty of loyalty based on violation of [Rule 3-310] occurs whether or not confidences are actually revealed in the adverse action." (*Benasra*, *supra*, 123 Cal.App.4th at p. 1187.)

"The breach occurs not when the attorney steps into court to represent the new client, but when he or she abandons the old client. Therefore, [defendants'] argument that section 425.16 applies to this tort must fail. In other words, once the attorney accepts a representation in which confidences disclosed by a former client may benefit the new client due to the relationship between the new matter and the old, he or she has breached a duty of loyalty. The breach of fiduciary duty lawsuit may follow litigation pursued

10.

against the former client, but does not arise from it." (*Benasra, supra,* 123 Cal.App.4th at p. 1189.)

In *Freeman v. Schack* (2007) 154 Cal.App.4th 719 (*Freeman*), the Fourth District refused to apply the anti-SLAPP statute to claims filed by two clients against their former attorney for breach of contractual and fiduciary obligations. Plaintiffs alleged that the attorney violated rule 3-310(C) and (E) of the Rules of Professional Conduct by abandoning them to represent parties with adverse interests in the plaintiffs' pending class action lawsuit and in a new competing class action case. (*Id.* at pp. 727-728.) The defendant filed a special motion to strike pursuant to section 425.16, arguing the claims necessarily arose from protected speech and petitioning activity in connection with litigation as classified under subdivisions (e)(1), (2) and (4) of the statute. (*Id.* at pp. 725-726.)

The Fourth District concluded that the attorney's litigation activity was collateral to the core allegation that he breached a duty of loyalty owed to his former clients. On the one hand, the defendant's attorney/client relationship with his subsequent clients was a "major focus" of the claims in question. "However, the fact [that] plaintiffs' claims are related to or associated with [defendant's] litigation activities is not enough. 'Although a party's litigation-related activities constitute "act[s] in furtherance of a person's right of petition or free speech," it does not follow that any claims associated with those activities are subject to the anti-SLAPP statute.'" (*Freeman, supra,* 154 Cal.App.4th at pp. 729-730.) The gravamen of the complaint was the defendant's "undertaking to represent a party with interests adverse to plaintiffs, in violation of the duty of loyalty he assertedly owed them." (*Id.* at p. 732.)

In *U.S. Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton* (2009) 171 Cal.App.4th 1617, the First District followed the reasoning of *Benasra* and *Freeman* in holding that section 425.16 did not apply to a lawsuit involving a law firm's representation of a party with interests adverse to a former client. (*Id.* at pp. 1626-1629.)

11.

The basis of the complaint was not the defendant's disclosure of its former client's confidences, but the conflict of interest created by subsequent representation of an adverse party in violation of Rule 3-310(E).  (*Id*. at p. 1629.)  Other cases have reached similar conclusions where litigation is predicated upon an attorney's breach of fiduciary duties.  (See, e.g., *Coretronic*, *supra*, 192 Cal.App.4th at pp. 1392-1393 [client's lawsuit challenging law firm's simultaneous representation of adversary in a separate proceeding not based on protected litigation activity on behalf of the adversary, but on a breach of the duty of loyalty owed to the plaintiff]; *Hylton*, *supra*, 177 Cal.App.4th at p. 1274 [plaintiff's claims centered around attorney/client communications, but the gravamen of the action was the alleged violation of defendant's fiduciary obligations].)

This line of authority leads us to conclude that respondents' causes of action do not arise from protected activity within the meaning of the anti-SLAPP statute.  The foundation of each claim is the allegation that Sagaser chose to align himself with respondents' adversaries, in direct opposition to respondents' interests, thereby breaching duties of loyalty and confidentiality owed to them by virtue of a prior attorney/client relationship.  Respondents' complaint specifically alleges that Sagaser violated the State Bar Rules of Professional Conduct, including rule 3-310, which is the principal thrust of their lawsuit.

The significance of the holdings in *Benasra*, *Freeman*, and similar cases is argued by respondents throughout their opposition papers and briefing on appeal.  Sagaser all but ignores these authorities, save his contention that "[t]he cases Plaintiffs cited in their opposition involve fact patterns where former attorneys actively represented adverse parties against their former clients, a situation not present here."  As we read the record, that is precisely what respondents have alleged in this lawsuit.  The pleadings assert that "Sagaser actively participated in the preparation of Bratton's Complaint and represented and advised Bratton in the action against Sagaser's former clients."

12.

We do not consider the veracity of respondents' allegations in determining whether their claims arise from protected speech or petitioning activity. (*Coretronic*, *supra*, 192 Cal.App.4th at p. 1388 ["Arguments about the merits of the claims are irrelevant to the first step of the anti-SLAPP analysis."].) Consequently, Sagaser's factual denials and focus on affirmative defenses do not assist him in carrying his initial burden. If Sagaser cannot make the threshold showing, it is immaterial that he may otherwise be able to succeed on the merits under the second prong of the statute. (*Freeman, supra,* 154 Cal.App.4th at p. 733.)

Sagaser's arguments regarding the timing of respondents' lawsuit and their subjective motivations for filing it are also misguided. Motives are irrelevant under section 425.16, and "a claim filed in response to, or in retaliation for, threatened or actual litigation is not subject to the anti-SLAPP statute simply because it may be viewed as an oppressive litigation tactic." (*Cotati, supra*, 29 Cal.4th at p. 78.) "That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such." (*Ibid*.) We thus have no reason to address the contention that respondents filed their complaint "to punish Sagaser for his participation in the *Bratton v. Jones* suit as a witness and for his meetings with Georgeson in contemplation of filing his own claims."

Sagaser's communications with attorney Georgeson and testimony in the *Bratton v. Jones* matter may have been the impetus for this lawsuit, but those activities are collateral to the principal thrust of respondents' causes of action. The behavior is more appropriately characterized as evidence of Sagaser's alleged breach of fiduciary duties or evidence in support of an affirmative defense. (See *Benasra, supra*, 123 Cal.App.4th at p. 1189 ["Evidence that confidential information was actually used against the former client in litigation would help support damages, but is not the basis for the claim."] Although protected speech and petitioning are part of the "evidentiary landscape" within which the action arose, the claims are ultimately based on the allegation that Sagaser

13.

engaged in conduct inconsistent with the fiduciary obligations he owed to the respondents. (*Hylton*, *supra*, 177 Cal.App.4th at p. 1272.)

Relying on *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294 (*Fox Searchlight Pictures*) Sagaser argues that even if he disclosed confidential information about the respondents to attorney Georgeson, such conduct falls within the scope of protected activity under section 425.16.[5]  As we have stated, Sagaser's protected litigation activities are not the gravamen of respondents' causes of action.  Furthermore, the trial court cogently distinguished *Fox Searchlight Pictures* in its order denying the special motion to strike:

> "In *Fox Searchlight*, the defendant was an employee who disclosed confidential information about her former employer, who was also her client, with regards to an intended wrongful termination suit.  Defendant Sagaser's client, whose confidences he allegedly disclosed, was not his employer.  Defendant was not disclosing confidences of the person or persons against whom he was contemplating asserting claims…. The 'specific' and limited issue on appeal in *Fox Searchlight* was: 'may an attorney suing her **former employer** for **wrongful termination** disclose to her own lawyers employer-client confidences **obtained during the course of her employment** insofar as they are relevant to the **wrongful termination action**?" [*Fox Searchlight Pictures, Inc., supra,* 89

---

[5] Sagaser also submitted a copy of the opinion in *Greka Integrated, Inc. v. Lowrey* (2005) 133 Cal.App.4th 1572 (*Greka*) as supplemental authority regarding the disclosure of confidential information in the context of an anti-SLAPP action.  The case does not support Sagaser's position on appeal.  *Greka* involved an employer's claims for breach of contract and conversion against a former employee who had signed, and allegedly violated, a written nondisclosure agreement.  (*Id*. at pp. 1575-1576.)  The conduct at issue in *Greka* is markedly different from an attorney's breach of fiduciary obligations owed to a former client.

14.

Cal.App.4th at p. 310.] There is nothing in *Fox Searchlight* to suggest that an attorney can disclose privileged information of his former clients to parties in direct conflict with the former clients and to the rivals' attorney." [Emphasis in original]

Finally, we reject the argument that the trial court "failed to presume that Sagaser's conduct was protected, and instead (improperly) shifted the burden to Sagaser." Quoting from *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083 (*Chavez*), Sagaser contends "a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis." (*Id*. at p. 1089.) The quote is accurate, but Sagaser distorts the holding of the case.

The *Chavez* opinion clearly states that "the defendant has the initial burden to make a prima facie showing that the plaintiff's claims are subject to section 425.16." (*Chavez, supra*, 94 Cal.App.4th at p. 1087.) *Chavez* involved a malicious prosecution action arising from the defendant's filing of a prior lawsuit against the plaintiffs. In opposing the defendant's anti-SLAPP motion, plaintiffs argued that malicious prosecution claims should never be subject to section 425.16 because litigants do not have a constitutionally protected right to file a complaint without probable cause or factual support. (*Id*. at pp. 1088-1089.) The appellate court rejected the argument, holding that if a claim arises from facially constitutional petitioning activity (e.g., the filing of a lawsuit), the validity or legality of the defendant's conduct should only be assessed under the second prong of the statute. (*Id*. at p. 1089.)

Although Sagaser characterizes the claims differently, respondents' causes of action arise from an alleged breach of professional and ethical duties. Under *Benasra, Freeman*, and their progeny, an attorney's breach of fiduciary duties owed to a current or former client does not constitute protected speech or petitioning within the meaning of section 425.16. Like the appellant in *Hylton*, *supra*, Sagaser does not attempt to

15.

distinguish these cases and fails to articulate any reason for us to depart from their analysis. (*Hylton*, *supra*, 177 Cal.App.4th at p. 1274.)

The trial court was correct in determining that Sagaser did not satisfy his burden as the moving party under the first prong of the anti-SLAPP statute. Accordingly, we do not extend our analysis to the merits of the case.[6] (*Tuszynska, supra*, 199 Cal.App.4th at p. 266.) Sagaser will have the opportunity to establish any defenses he may have to respondents' claims, but a special motion to strike under section 425.16 was not the proper procedural device for presenting those defenses.

## DISPOSITION

The order is affirmed. Respondents' Request for Judicial Notice and Motion to Admit New Evidence filed on April 5, 2013 is denied.

_____

Gomes, J.

WE CONCUR:

_____

Levy, Acting P.J.

_____

Detjen, J.

---

[6] For this reason, we deny as moot Respondents' Request for Judicial Notice and Motion to Admit New Evidence filed on April 5, 2013.

16.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PETER M. CASTLEMAN, et al., | F064590 |
| Plaintiffs and Respondents, | (Super. Ct. No. 11CECG03132) |
| v. | |
| HOWARD A. SAGASER, | **ORDER MODIFYING OPINION AND GRANTING REQUEST FOR PUBLICATION** |
| Defendant and Appellant. | |

**THE COURT:**

It is ordered that the opinion herein filed on April 15, 2013, be modified by striking the second sentence of the third full paragraph on page 3 (starting with "As compensation for …" and ending with "… business ventures.") and inserting the following sentence in its place:

> The parties allegedly gave Jones a percentage ownership interest in the subject properties and business ventures as compensation for his services, including his managerial role in several of the participating entities.

This modification does not effect a change in the judgment.

As the nonpublished opinion in the above entitled matter meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is hereby ordered that the opinion be certified for publication in the Official Reports.

_____
Gomes, J.

I CONCUR:


_____
Levy, Acting P.J.