Filed 6/17/15  Telegraph Hill Properties v. Thompson CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| TELEGRAPH HILL PROPERTIES, INC., et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>ERIN THOMPSON,<br><br>    Defendant and Appellant. | A137511<br>A137885<br><br>(City and County of San Francisco<br>  Super. Ct. No. CGC-12-526194) |

Defendant Erin Thompson appeals from (1) an order filed on December 13, 2012, which, in pertinent part, granted a preliminary injunction in favor of plaintiff Telegraph Hill Properties, Inc. (THP), and directed her to return certain electronically recorded documents (electronic records) (including attorney-client privileged documents) that she obtained from THP, together with all copies (both paper and electronic) of those documents that were in her and her counsel's possession, custody, or control; and (2) an order filed on January 11, 2013, which, in pertinent part, denied her special motion to strike the complaint of plaintiffs THP and North Beach Partners, LLC (NBP), as a strategic lawsuit against public participation pursuant to Code of Civil Procedure,[1] section 425.16 (hereafter also referred to as the SLAPP statute or the anti-SLAPP statute).  We affirm.

---

[1]    All further unspecified statutory references are to the Code of Civil Procedure.

1

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.      Background

Plaintiff THP is a real estate brokerage with its principal place of business in San Francisco, California, and Plaintiff NBP, is a Nevada limited liability company with its principal place of business in San Francisco, California.  WB Coyle is the president of THP and the managing member of NBP.  Defendant Erin Thompson, a licensed real estate agent, was a realtor who worked for THP from 2006 until April 2011.

On November 19, 2012, plaintiffs filed a lawsuit against Thompson, seeking compensatory and punitive damages for "possession of personal property."[3]  Plaintiffs alleged that THP had made it clear to all persons who had access to its computer server that their access to the electronic records on the computer server was limited to their work on behalf of THP or other entities using the computer equipment, that all persons were required to maintain the confidentiality of the electronic records, and that THP made reasonable efforts to insure that the electronic records were secure.  It was then alleged that on or about April 19, 2011, before or after regular business hours (either late in the evening or early in the morning of the following day), Thompson or "other persons acting on her behalf" obtained access to THP's computer equipment and used a device to copy all of the electronic records on the computer's server in violation of Thompson's agreements with THP and her obligations as a realtor working for THP.  On numerous subsequent occasions, THP demanded that Thompson return the copies of the electronic records, but she repeatedly refused to do so.  On or about April 27, 2011, Thompson's counsel informed THP that counsel had possession of the electronic records that had been copied from THP's computer server.  Thereafter, on numerous occasions, THP demanded that Thompson's counsel return the electronic records but counsel refused to do so.  THP sought both compensatory and punitive damages.

---

[2]      We set forth only those facts that are necessary to resolve these appeals.

[3]      Although Thompson's counsel, Seiler Epstein Ziegler & Applegate, LLP, was also named as a defendant, plaintiffs dismissed their claims against the law firm.

## B. Trial Court Proceedings

On the day after the filing of the complaint, and after notice to Thompson, plaintiffs secured an order to show cause why a preliminary injunction should not issue directing Thompson and her counsel to return the electronic records (including attorney-client privileged documents) that Thompson "stole/obtained" from THP and were then in the possession of her counsel. Plaintiffs submitted a declaration from Coyle in support of the request for a preliminary injunction. Coyle believed that in the Spring of 2011, Thompson had copied "all of the thousands of files," which were on THP's computer server. The files were electronic records consisting of plaintiffs' business records as well as Coyle's personal records for the past 15 years. Coyle initially suspected the theft of the electronic records early on the morning of April 22, 2011, when he saw Thompson's assistant leaving the office with what appeared to be a USB cable hanging out from under his jacket. Given the quantity of information that was copied from the computer server, Coyle surmised it must have taken a considerable amount of time to copy, at least several hours, and it was the actual theft of the device on which electronic records had been copied that probably occurred on the morning of April 22, 2011. Coyle further averred that in an email Thompson had confirmed that she copied everything from the THP computer server onto an external hard drive and given the hard drive to her counsel "so that they could use it as leverage against" him. Coyle made numerous unsuccessful demands for the return of the hard drive and any other copies of the electronic records taken from the computer server. Coyle further explained he had not earlier sought legal action for two reasons: (1) on June 10, 2011, Thompson's counsel had threatened to pursue a criminal prosecution against Coyle if he took legal action against Thompson concerning the hard drive, and that even if the criminal charges were later dropped, the prosecution would be expensive to defend and ruin his reputation; and (2) Coyle's financial condition was dire as a number of properties in which he had an economic interest were in foreclosure. Nonetheless, Coyle decided to file this legal action because of "the very serious threat that the privileged and confidential information contained on

3

the hard drive might be used by" Thompson's counsel in representing certain parties against THP and NBP in a pending arbitration.

In opposing the request for a preliminary injunction, Thompson submitted a declaration describing her employment with THP. She claimed that in 2011, she became aware that Coyle was lying to his investors about the amount of commissions that were being paid by the company, including making a false statement that she had been paid a commission regarding a certain property, when in fact she had not been paid a commission. She checked the spreadsheet for the transaction and discovered that it had been altered after her meeting with Coyle about the claim of a commission payment. She was concerned that investors filing any action for fraud or to rescind sales of the properties against Coyle and THP would seek to recoup funds from her for moneys that she had never been paid by THP. She then averred, "Fortunately, a copy of the file server of Telegraph Hill Properties came into my possession. This file server preserved the electronically stored information at least as of April 2011. The Telegraph Hill Properties transaction files that are contained on that server are direct, documentary proof of the transactions – before Mr. Coyle could falsify them further." Thompson further stated that in May 2011 she consulted with counsel regarding Coyle's conduct and his threats against her. She gave the copy of the electronic records taken from THP's computer server to her counsel to be "maintained in trust." She had accessed the electronic records to review financial information as it pertained to her during her employment with THP, her transactions, and her properties. She discovered that Coyle had forged her signature on a LLC Operating Agreement pertaining to property that both she and Coyle owned in San Francisco. She therefore claimed that the reason why the electronic records taken from THP's computer server were being "maintained in trust" was to preserve evidence related to the THP transactions that Coyle could further attempt to falsify. She claimed she had no interest in maintaining any of the information, except to defend herself against claims by Coyle's investors or by Coyle himself.

In a reply declaration, Coyle denied Thompson's allegations, averring that he never altered any spreadsheet to show that Thompson had been paid a commission, but

4

there were several documents showing she had earned a commission on a transaction. He also told her that there was a problem with an office file because it did not include a copy of the disclosure package that had been signed by the buyer, that as the realtor on that transaction it was her responsibility to obtain a signed copy of the disclosure package, and that Thompson believed that the person who had acted on behalf of the buyer would sign a document confirming that he had received the disclosure package – because that was true: she had delivered the disclosure package.

After argument on the matter on December 13, 2012, the trial court granted plaintiffs' request for a preliminary injunction, and directed Thompson to return the electronic records (including attorney-client privileged documents) that she had obtained from THP and were then in the possession of her counsel, together with all copies (both paper and electronic) of those documents that were in the possession, custody, or control of Thompson and her counsel. Before the injunction would take effect, the court required plaintiffs to file a written undertaking in the sum of $10,000, pursuant to section 529, for the purpose of indemnifying Thompson and her counsel for the damages that they might sustain by reason of the preliminary injunction if the court finally decided that plaintiffs were not entitled to injunctive relief.

Following the issuance of the preliminary injunction order, Thompson filed a section 425.16 special motion to strike the complaint, which was opposed by plaintiffs. The parties submitted declarations, essentially asking the court to consider the same facts that had been submitted to the court concerning plaintiffs' request for a preliminary injunction. After considering the parties' documents and arguments by counsel on January 11, 2013, the trial court issued a written decision and order denying Thompson's anti-SLAPP motion.

Thompson timely appealed from the orders filed on December 13, 2012, and January 11, 2013.

5

**DISCUSSION**

## I. Denial of Thompson's Special Motion to Strike the Complaint

Section 425.16, subdivision (b)(1), states, in pertinent part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

"In ruling on a special motion to strike, the trial court follows a two-step analysis that involves shifting burdens. (*Smith v. Adventist Health System/West* (2010) 190 Cal.App.4th 40, 50 [117 Cal.Rptr.3d 805].) The moving defendant carries the initial burden to show the challenged cause of action arises from protected free speech or petitioning activity. (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1387 [121 Cal.Rptr.3d 254] (*Coretronic*).) The burden is satisfied by demonstrating that the conduct underlying the plaintiff's claim fits into a category of protected activity set forth in section 425.16, subdivision (e). [4] (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) [¶] If the court finds the defendant's threshold showing has been made, the burden shifts to the plaintiff to produce evidence establishing a probability of prevailing on the cause of action. (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] [(*Equilon Enterprises*)].)" (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 489-490, fn. omitted (*Castleman*).) On appeal, our

---

[4]     Section 425.16, subdivision (e), categories include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

review "of an order . . . denying a motion to strike under section 425.16 is de novo." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

In evaluating whether Thompson met her burden on the first step of the section 425.16 analysis, "the critical consideration is whether the cause of action [against her] is *based on* protected free speech or petitioning activity." (*Navellier, supra,* 29 Cal.4th at p. 89.) We examine that alleged "wrongful conduct *itself*, without particular heed to the form of action within which it has been framed." (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 671 (italics added) (*Peregrine Funding*), citing to *Navellier, supra*, 29 Cal.4th at pp. 92-93, and *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734-735.) In other words, we look to the nature of the dispute to be resolved by plaintiffs' lawsuit, and analyze whether that "dispute, and not any protected activity, is 'the gravamen or principal thrust' of the action." (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477-478.) "We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.' (*Coretronic, supra*, 192 Cal.App.4th at p. 1389.)" (*Castleman, supra*, 216 Cal.App.4th at p. 491.) "If liability is not based on protected activity, the cause of action does not target protected activity and is therefore not subject to the SLAPP statute." (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1550.)

Concededly, "[s]ection 425.16 is broadly construed to encompass a variety of prelitigation and litigation-related activities. (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 822-824 [150 Cal.Rptr.3d 224].)" (*Castleman, supra*, 216 Cal.App.4th at p. 491.) "[T]his does not mean, however, that [Thompson] can carry [her] burden by highlighting the fact that [she] consulted a lawyer about matters involving [plaintiffs]." (*Ibid.*) "Although a party's litigation-related activities constitute 'act[s] in furtherance of a person's right of petition or free speech,' it does not follow that any claims associated with those activities are subject to the anti-SLAPP statute." (*Freeman*

7

*v. Schack* (2007) 154 Cal.App.4th 719, 729-730; see *Equilon Enterprises, supra*, 29 Cal.4th at p. 66.)

Despite Thompson's arguments to the contrary, we are not here concerned with prelitigation conduct that courts have found to be subject to the anti-SLAPP statute. Rather, plaintiffs' lawsuit is based solely on allegations that Thompson improperly acquired and retained copies of all the electronic records that were taken from THP's computer server without its consent. Thompson's alleged conduct does not constitute petitioning or free speech activity, and therefore, does not fall within the scope of section 425.16. (See *Renewable Resources Coalition, Inc. v. Pebble Mines Corp.* (2013) 218 Cal.App.4th 384, 387, 396-397 (*Renewable Resources Coalition*) [plaintiff's complaint that defendants wrongfully purchased its confidential information was not an act by defendants in furtherance of their constitutional rights of petition or free speech]; *Peregrine Funding, supra,* 133 Cal.App.4th at p. 671 [plaintiff's complaint that defendant law firm improperly failed to turn over all client documents to bankruptcy trustee "does not appear to target speech or petitioning activity"].) [5]

In seeking to demonstrate that she met her burden under the first step of the section 425.16 analysis, Thompson asks us to consider that her conduct was justified because she had a good faith belief that she was in danger of being named as a defendant in litigation for which some of the electronic records might be pertinent to her defense;

---

[5]  We are not persuaded by Thompson's attempts to distinguish *Renewable Resources Coalition* on the ground that the gravamen of the lawsuit there was "to prevent bribery," while the gravamen of the lawsuit here is "to prevent a client from communicating with her attorneys and preserving evidence for potential litigation." Plaintiffs' motive in bringing the lawsuit "is not relevant under the anti-SLAPP statute. As a corollary, a claim filed in response to, or in retaliation for, threatened or actual litigation is not subject to the anti-SLAPP statute simply because it may be viewed as an oppressive litigation tactic." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)

Additionally, we see nothing in *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, *CKE Restaurants, Inc. v. Moore* (2008) 159 Cal.App.4th 262, or *Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, cited by Thompson, which supports a finding that she met her burden under the first step of the section 425.16 analysis.

8

and she therefore "had and continues to have every right to defend herself with a powerful weapon: documents revealing the truth about WB Coyle. She had the right to take the least invasive steps possible to preserve evidence, and to provide that evidence to her attorneys to hold in trust. . . . She had every right to ask her attorneys to keep documents that would potentially protect her from unfounded allegations – from being set up by WB Coyle for investor lawsuits." However, these arguments address the merits of plaintiffs' lawsuit and Thompson's defenses, which are not relevant to the first step of the section 425.16 analysis. (See *Castleman, supra*, 216 Cal.App.4th at p. 493; *Coretronic, supra*, 192 Cal.App.4th at p. 1388.)

Based on our independent review of the record, we conclude Thompson failed to meet her threshold burden to show plaintiffs' claims arose from constitutionally protected activity within the meaning of section 425.16. Thus, the trial court properly denied Thompson's anti-SLAPP motion as plaintiffs' lawsuit "was not subject to early scrutiny by way of a special motion to strike." (*Renewable Resources Coalition, supra*, 218 Cal.App.4th at p. 398.) In light of our determination, we do not reach the second step of the section 425.16 analysis concerning whether plaintiffs demonstrated a probability of prevailing on the merits of their complaint. Accordingly, Thompson is "free to challenge" the complaint "on other grounds and through other procedural means." (*Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1288, fn. omitted.)

## II.     Grant of Preliminary Injunction

Thompson challenges, on various grounds, the trial court's grant of a preliminary injunction. We conclude none of her contentions warrants reversal.

In granting preliminary injunctive relief, the trial court relied on *Pillsbury, Madison & Sutro v. Schectman* (1997) 55 Cal.App.4th 1279 (*Schectman*), which was also primarily relied on by plaintiffs to support their request for preliminary injunctive relief. In that case, plaintiff Pillsbury, Madison & Sutro (PM&S), a law firm, brought an action against Steven Schectman and Law Offices of Pinnock & Schectman (Schectman) "for specific recovery of personal property and for temporary, preliminary, and permanent

injunctive relief. The complaint alleg[ed] Schectman gained possession of confidential personnel documents removed from the offices of PM&S without its consent. Schectman represent[ed] current and former PM&S employees in connection with employment law claims against PM&S. PM&S also filed applications for writ of possession, [and] a temporary restraining order." (*Id*. at p. 1282.) "Under the authority of the claim and delivery of personal property statutes (Claim and Delivery Statutes) (Code Civ. Proc., §§ 511.010-516.050) and those providing for injunctions (*id*., § 526 et seq.), along with the court's inherent authority to administer the resolution of disputes, the [trial] court issued an order requiring Schectman to surrender originals and copies of documents removed from PM&S . . . ." (*Schectman, supra*, at p. 1282.) On appeal, our colleagues in Division Two upheld the trial court's order, which was challenged only on the ground that a preliminary injunction did not lie. (*Id*. at pp. 1283-1284.) The court found that a preliminary injunction was properly issued for Schectman's "wrongful possession of confidential documents for use in anticipated litigation against PM&S," based on the court's inherent authority to administer the resolution of disputes, and in the absence of any policy exception to that authority, such as an underlying First Amendment issue, or justification based on evidence of threats of physical harm. (*Id*. at p. 1287.) The court explained, "Schectman's assertion of an interest or justification superior to any interest grounded 'solely on the basis of ownership' is not readily distinguished from a pickpocket's interest in a stranger's purse. Whether or not he might be able to articulate an end justifying the means he proposes — which is no less than to lay claim to documents which do not arguably 'implicate any personal privacy interest' — he would still fail to state a sufficient reason to subvert society's interest in preserving private property, as well as maintaining the jurisdiction of the courts to administer the orderly resolution of disputes. The trial court properly rejected these claims under the authority of the Claim and Delivery Statutes, which are based not only upon fundamental common law concepts of property ownership and conversion, but also upon a recognition of the court's inherent authority to administer disputes over possession of chattels. [¶] Accordingly, although it is enough to conclude there was no abuse of discretion in

granting the injunction in this case, we will state clearly our agreement with those courts which have refused to permit 'self-help' discovery which is otherwise violative of ownership or privacy interests and unjustified by any exception to the jurisdiction of the courts to administer the orderly resolution of disputes. Any litigant or potential litigant who converts, interdicts or otherwise purloins documents in the pursuit of litigation outside the legal process does so without the general protections afforded by the laws of discovery and risks being found to have violated protected rights. The least sanction cognizable in these circumstances would appear to be the one chosen by the trial court here: the return to the status quo existing at the time the documents were taken." (*Id.* at pp. 1288-1289.)

We reject Thompson's initial argument that a mandatory injunction was not available for plaintiffs' claim to recover personal property. According to Thompson, the grant of a mandatory injunction was erroneous as a matter of law for two reasons: (1) it altered the status quo because at the time of the request she or her counsel had possessed and retained the copied electronic records for 18 months, and (2) an exception allowing the grant of a mandatory injunction under the Claim and Delivery statute concerning repossession of personal property (§§ 511.010-516.050) was not available because plaintiffs did not sue under that statute and did not request relief by way of a writ of possession. However, as explained by the court in *Schectman, supra,* 55 Cal.App.4th at p. 1289, the issuance of the preliminary injunction here in essence allowed for "the return to the status quo existing" at the time the electronic records were taken from THP's computer server without its consent. Additionally, the fact that plaintiffs did not sue or rely on the Claim and Delivery statute did not preclude the trial court's grant of injunctive relief pursuant to § 525 et seq. as requested by plaintiffs. The Claim and Delivery statute specifically provides, "Nothing in this chapter [Claim and Delivery of Personal Property] shall preclude the granting of relief pursuant to Chapter 3 [Injunction] (commencing with Section 525) of this title [Other Provisional Remedies in Civil Actions]." (§ 516.050; see *Schectman, supra*, 55 Cal.App.4th at pp. 1283-1284.)

11

Nor are we persuaded by Thompson's additional argument that the trial court abused its discretion in granting preliminary injunctive relief.  The trial court " ' "evaluate[s] two interrelated factors when deciding whether or not to issue a preliminary injunction.  The first is the likelihood that the plaintiff will prevail on the merits at trial.  The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm the defendant is likely to suffer if the preliminary injunction were issued." ' " (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109.)  "A trial court will be found to have abused its discretion only when it has ' "exceeded the bounds of reason or contravened the uncontradicted evidence." ' " (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69.)

Thompson contends that the trial court failed to give sufficient consideration to the following factors:  (1) her offer to deposit the hard drive containing the copied electronic records with a neutral third-party to preserve it as evidence; (2) plaintiffs' delay in seeking injunctive relief for 18 months; and (3) the weight of the evidence showed that Coyle was likely to alter documents and had already done so; and if the preliminary injunction were granted, without forcing a copy to be held in escrow, then Coyle would be free to conceal, alter or destroy evidence.  However, we must decline Thompson's request that we reweigh the evidence on this point.  "[T]he applicable standards of appellate review of [an order or] judgment based on affidavits or declarations are the same as for [an order or] a judgment following oral testimony:  We must accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence." (*Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923, citing to *Griffith Co. v. San Diego College for Women* (1955) 45 Cal.2d 501, 507-508.) Consequently, the trial court, after weighing "all the affidavits, declarations, and other documentary evidence . . . to reach a final determination" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972), was free to reject Thompson's submissions, and accept that plaintiffs had submitted adequate evidence demonstrating

both the immediate need for the injunctive relief and the reasons for the delay in earlier seeking the relief. Thus, we see no basis to disturb the trial court's grant of a preliminary injunction, which was based on its finding that the evidence and the inferences to be drawn from that evidence showed that neither Thompson nor her counsel had a lawful or public policy right or excuse to either possess or retain copies of the electronic records taken from THP's computer server without its consent. (See *Schectman, supra,* 55 Cal.App.4th 1279.) We conclude our discussion by noting that an order granting a preliminary injunction "reflects nothing more than the [trial] court's evaluation of the controversy on the record before it *at the time* of its ruling; it is not an adjudication of the ultimate merits of the dispute." (*People ex rel. Gallo v. Acuna, supra,* 14 Cal.4th at p. 1109.)

In the absence of any showing of error or abuse of discretion by the trial court, we must uphold the order granting preliminary injunctive relief.

## DISPOSITION

The order filed on December 13, 2012, and the order filed on January 11, 2013, are affirmed. Plaintiffs are awarded costs on appeal.


_____
Jenkins, J.


We concur:


_____
McGuiness, P. J.


_____
Siggins, J.


13