Filed 4/1/26  Lynberg & Watkins v. Chateau Nob Hill Apartments CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LYNBERG & WATKINS, et al.,<br><br>Cross-Defendants and Appellants,<br><br>v.<br><br>CHATEAU NOB HILL APARTMENTS, LP, et al.,<br><br>Cross-Complainants and Respondents. | B342272<br><br>Los Angeles County<br>Super. Ct. No. 23STCV25320 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Armen Tamzarian, Judge.  Affirmed.

Nemecek & Cole, Frank W. Nemecek, Mark Schaeffer, Howard Smith for Cross-Defendants and Appellants.

Thomas & Elliott, Stephen L. Thomas, Jay J. Elliott; Benedon & Serlin, Wendy S. Albers and Megan E. Walker for Cross-Complainants and Respondents.

————————————

Chateau Nob Hills Apartments owned an apartment building managed by Global Integrity Realty Corporation and insured by State National Insurance Company. When a tenant sued Chateau and Global, State National provided counsel Lynberg & Watkins to defend Chateau and Global in the action. Chateau and Global later sued Lynberg, alleging breach of fiduciary duty. Lynberg filed a motion under section 425.16, colloquially referred to as an anti-SLAPP motion, which the court denied. We affirm. Undesignated statutory citations are to the Code of Civil Procedure.

Chateau owned an apartment building in Los Angeles. Chateau hired Global to manage the building.

In 2022, a tenant sued Chateau and Global alleging harm from water intrusion leading to the growth of toxic mold in her unit. We refer to Chateau and Global collectively as Chateau. Chateau had purchased insurance policies from State National that listed Global as an additional insured. Chateau tendered the suit to State National for defense. State National issued a letter of reservation of rights and provided Lynberg & Watkins as counsel.

State National filed suit against Chateau seeking declaratory relief, rescission of the insurance policies, and reimbursement of attorney fees paid to Lynberg. Chateau became concerned Lynberg could not adequately represent both it and State National. It asked Lynberg for an analysis of its ability to represent both clients. Lynberg said it could not provide an opinion on coverage.

Chateau cross-complained in State National's suit, asserting allegations against it, as well as against Lynberg and attorneys Lane Webb and Rebecca Kurtz. We refer to Lynberg

2

and the attorneys collectively as Lynberg.  Chateau alleged Lynberg had breached its fiduciary duty to Chateau and sought a declaration from the court that Lynberg had not made the necessary disclosures to Chateau and could not accept payment for its conflicted representation without Chateau's consent.  Lynberg moved to be relieved as counsel for Chateau in the tenant suit.

Lynberg filed a motion under section 425.16.  The trial court denied the motion.

Lynberg appeals.

Lynberg argues the trial court erred in denying its anti-SLAPP motion because Chateau's claims were based on Lynberg's protected activity.  We disagree.

Section 425.16 allows courts to strike meritless claims early in litigation if the claims are based on protected speech and petitioning activities.  (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1004.)  We refer to such lawsuits as strategic lawsuits against public participation, or SLAPP, and the motions to end them as anti-SLAPP motions.

Evaluation of an anti-SLAPP motion takes place in two phases.  (*Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859, 871–872 (*Serova*).)  Initially, the court must identify the conduct on which the claim is based.  (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.)  The court must then determine if that conduct qualifies as protected activity under the statute.  (*Ibid.*)  If it is not, the statute does not apply.  (*Serova*, at pp. 871–872.)  If it is, the court then must evaluate whether the claim has minimal merit.  (*Olson v. Doe* (2022) 12 Cal.5th 669, 679.)  If it does not, the court will strike the relevant allegations.  (*Serova*, at pp. 871–872.)  If it does, the case

proceeds.  (*Ibid*.)  We review a court's determination at each step independently.  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

The statute's definition of protected activities includes written or oral statements made before or to a judicial or other official proceeding or made in connection with an issue under consideration by a judicial body or other official proceeding. (§ 425.16, subds. (e)(1) & (2).)  The statute also protects any other conduct in furtherance of the right of free speech or petition when taken in connection with an issue of public interest.  (*Id*. at subd. (e)(4).)  A claim is subject to the statute only if the conduct that forms the basis for the claim is itself protected activity.  (*Park*, *supra*, 2 Cal.5th at pp. 1062–1063.)

We look to the complaint and any affidavits from the parties to determine the basis for the claim.  (*Park, supra*, 2 Cal.5th at p. 1067.)  The veracity of the challenged conduct is immaterial at this stage.  (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 493 (*Castleman*).)

Lynberg argues Chateau's claims are based on activity Lynberg undertook on behalf of another client, State National, in connection with the ongoing tenant litigation, and therefore are subject to the statute.

In fact, Chateau's operative complaint alleges Lynberg breached its fiduciary duty to Chateau by simultaneously representing both State National and Chateau, by failing to make required disclosures to Chateau, and by failing to obtain Chateau's written consent to State National's funding of the defense.

Lynberg's argument has two components.  First, it frames the conduct as activity Lynberg took on behalf of another client,

4

rather than relating to its representation of Chateau. Second, it frames the conduct as activity in connection with litigation. Case law shows the flaw in each argument.

The court in *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1227 (*PrediWave*), noted that there was a distinction among three situations in the SLAPP context: 1) where a client sues based on the attorney's petitioning activities on that client's behalf; 2) where a client sues based on the attorney's petitioning activities on another client's behalf; and 3) where a non-client sues based on the attorney's petitioning activities on behalf of a client. The *PrediWave* court noted that the first category was generally not subject to the statute. (*Id.* at p. 1228.)

Lynberg's description of the challenged conduct as on behalf of a second client is an attempt to avoid the first category. However, the conduct Chateau described fits into the first category. (*Loanvest I, LLC v. Utrecht* (2015) 235 Cal.App.4th 496, 505 [that attorney called new client the "true client" did not change the fact the party's claims were based on breach of loyalty owed to the party client].) Chateau's claims are based on Lynberg's breach of fiduciary duty and conduct toward Chateau. (*Castleman*, *supra*, 216 Cal.App.4th at p. 491 [actions based on attorney's breach of professional and ethical duties to client not subject to statute].)

The court in *PrediWave* considered similar activity. There, a company client alleged its attorneys had breached their fiduciary duties to the company by simultaneously representing the company's CEO, whose interests were at odds with those of the company. (*PrediWave, supra*, 179 Cal.App.4th at pp. 1226–1227.) The *PrediWave* court found the company's claims against

5

the attorney were based on the joint representation and the attorneys' implementation of litigation strategy designed to benefit the CEO. (*Ibid.*) Such conduct was not a writing or statement protected by the statute. (*Id.* at p. 1227.)

The court in *Sprengel v. Zbylut* (2015) 241 Cal.App.4th 140, 151 (*Sprengel*) repeated the observation that "numerous cases have held that 'actions based on an attorney's breach of professional and ethical duties owed to a client' are generally not subject to section 425.16 'even though protected litigation activity features prominently in the factual background.'" These cases make clear that what matters is the conduct giving rise to the claims regardless of the litigation activity that frequently attends such circumstances. (*See, e.g.*, *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 732 [allegations of filing and settlement conduct incidental to allegations of breach of fiduciary duty]; *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 813 [distinguishing cases in which breach of loyalty gave rise to claims because in this case conduct was using confidential information in a proceeding].) As in *Sprengel*, Lynberg here has done nothing to show it does not fit into the same category. (*Sprengel*, at p. 155 [Sprengel's claims cannot be meaningfully distinguished from claims in other cases arising from breach of duty of loyalty and so are also outside of the statute's scope].)

Lynberg attacks these cases by noting the court in *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 674 (*Peregrine*) questioned *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179 (*Benasra*). The *Benasra* court denied a motion under the statute because the conduct underlying the claims was the attorney's breach of loyalty by accepting representation of a

6

party with conflicting interests with another current client.  (*Benasra*, at pp. 1186–1187.)  The attorneys argued the basis for the claims was the actions the attorneys took on behalf of the new clients, but the court disagreed, noting the breach took place as soon as the attorneys accepted the representation and would have existed regardless of any additional steps the attorneys took to further the interests of the new clients.  (*Ibid*.)

The *Peregrine* court believed such reasoning unsound because it failed to take into account the allegations that the harm arose from the specific acts the attorneys later took in representing the new clients.  (*Peregrine, supra*, 133 Cal.App.4th at p. 674.)  Such parsing of allegations was inconsistent with the mandate that the law be construed liberally.  (*Ibid*.)

*Benasra* and its progeny have the better argument. Looking at the conduct truly underlying the claims is consistent with the statute.  Moreover, the facts in *Peregrine* were distinguishable because the court's focus was on whether the statute applies when claims are partially based on protected activity.  *Peregrine* also differs factually because it involved claims against the attorneys by non-parties as well as clients.  It is not apposite.

Lynberg's argument that noncommunicative conduct during litigation can be subject to the statute is immaterial.  As discussed above, any litigation activity here is merely incidental to the activity giving rise to Chateau's claims: Lynberg's breach of its duties to Chateau.

The other cases Lynberg cites are inapposite.

*Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 155 involved a challenge to an attorney's conduct on behalf of a client by a non-client.

In *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153 (*Fremont*), *Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th 118 (*Suarez*), and *Crossroads Investors., L.P. v. Fed. Nat. Mortgage Assn.* (2017) 13 Cal.App.5th 757 (*Crossroads*), the underlying activity was an action taken in or in connection with an issue in a judicial or official proceeding. (*Fremont*, at p. 1170 [statements to Commissioner in liquidation proceedings]; *Suarez*, at p. 125 [concealment during settlement negotiations], *Crossroads*, at p. 778 [discovery responses and omissions related to topics court was ruling on in case].) Because the activity underlying Chateau's claims was not itself an action in a litigation, none of these cases are on point.

## DISPOSITION

We affirm the order and award costs to respondents.

WILEY, ACTING P. J.

We concur:

VIRAMONTES, J.          SCHERB, J.

8