Filed 2/27/24  Simmons v. Leissner CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| RUSSELL SIMMONS, | B322160 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV18852) |
| v. | |
| TIM LEISSNER et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Affirmed.

Law Offices of Kirk Edward Schenck and Kirk Edward Schenck for Defendant and Appellant Tim Leissner.

King & Spalding, David K. Willingham, Michael D. Roth, Kelly Perigoe and Blythe G. Kochsiek for Defendant and Appellant Kimora Lee Simmons-Leissner.

Pryor Cashman, Michael J. Niborski and Benjamin S. Akley for Plaintiff and Respondent.

———————————

# INTRODUCTION

Appellants Tim Leissner (Leissner) and Kimora Lee Simmons-Leissner (Lee) ask us to reverse the orders denying their respective special motions to strike the fraud claims in respondent Russell Simmons's (Simmons) complaint as a strategic lawsuit against public participation under the anti-SLAPP statute, Code of Civil Procedure section 425.16.

Leissner and Lee argue Simmons's fraud claims are "mixed causes of action" that include allegations of protected activity—i.e., two letters they wrote in connection with an ongoing federal case against Leissner—as well as nonprotected activity.

We disagree and find that the complaint alleges the two letters are merely incidental to and constitute evidence of the fraud claims. They are not the bases of the causes of action themselves.

We affirm the trial court's denial of both anti-SLAPP motions.

# FACTUAL AND PROCEDURAL BACKGROUND

## I. *Relevant Background Information*

Simmons is a famous music record producer and founder of Def Jam Records. Simmons and Lee were married from 1998 to 2009; they appeared in television shows together. Simmons "enjoyed a special confidential relationship of trust and confidence" with Lee, who is "his ex-wife, mother of his children, business associate and advisor."

In 2011, Simmons formed Nu Horizons Investment Group, LLC (Nu Horizons) and was its sole member and manager. Nu Horizons is a limited liability company that provides its members with the opportunity to realize long-term appreciation from

2

investments in securities selected by the managers and approved by the investment board.

In 2014, Lee married Leissner, a "superstar investment banker" and managing director at Goldman Sachs Group, Inc. (Goldman Sachs). Simmons "enjoyed a special confidential relationship of trust and confidence" with Leissner, who is "his fiduciary, step-father to his children and . . . trusted business associate and advisor."

In 2016, Simmons and Leissner executed an operating agreement for Nu Horizons, by which Leissner also became a manager of Nu Horizons; Leissner's alter-ego vehicle—Cuscaden Capital Limited (Cuscaden)—became a 51 percent member of Nu Horizons; Simmons maintained a 49 percent interest of Nu Horizons; and Lee became an advisor to and member of Nu Horizons's investment board. As part of Nu Horizons's first investment, Simmons identified publicly-traded company Celsius Holdings, Inc. (Celsius); Nu Horizons made considerable investments of tens of millions of dollars.

According to the operating agreement, each member's ownership interest in Nu Horizons was set by the amount of their capital contributions. In the event of a distribution by Nu Horizons, each member was entitled to reimbursement of their initial capital contribution as well as a pro rata share of the remainder based on their ownership percentage. Also, section 8.1 of the operating agreement provides, "All acts, decisions and consents of the Managers shall require unanimous approval of the Managers."

In 2017, federal criminal charges were filed against Leissner arising out of his role in the Malaysian Development Bank (1MDB) fraud while he was managing director at Goldman

3

Sachs.[1]  The court documents alleged that more than $200 million were disbursed to Leissner and another alleged co-conspirator as part of their involvement in the 1MDB scheme.

On June 10, 2018, Leissner was arrested in the 1MDB federal case.  On November 1, 2018, he entered a guilty plea to criminal conspiracy to violate the federal Foreign Corrupt Practices Act and conspiracy to commit money laundering.  As part of his plea agreement, he agreed to repay $44 million.

In July 2019, Simmons's accountants were conducting a review of tax documents related to Celsius and discovered "a substantial unexplained change" in Simmons's interests in Nu Horizons and Celsius.  While Celsius paperwork dated December 31, 2017 showed Simmons as the beneficial owner of 3,972,659 Celsius shares, paperwork dated December 31, 2018 identified Lee as the purported owner of those 3,972,659 Celsius shares with full voting and investment power over them.

Simmons discovered that Lee and Leissner, "knowing full well that [Leissner] would need tens of millions of dollars to avoid jail time, stay out on bail and forfeit monies for victim compensation" in the 1MDB federal case, had conspired and/or aided and abetted a fraudulent transaction, whereby they unlawfully transferred the Celsius shares owned by Nu Horizons and Simmons to themselves, without consideration to or consent by Simmons.  Leissner and Lee "entered into an unlawful agreement [on May 21, 2018], reported on a SEC Schedule 13G for Celsius, [which reflected] a series of transactions unknown to,

---

[1]  *U.S. v. Leissner* (E.D.N.Y., June 7, 2018, No. 1:18-cr-00439.)

and not consented by Simmons, either in his individual capacity or as Manager of [Nu Horizons]."[2]

Since July 2019, Simmons has unsuccessfully reached out to Leissner and Lee "in an effort to avoid this very litigation by amicable non-litigious means."

## II.   *Civil Complaint*

On May 18, 2021, Simmons, individually and on behalf of Nu Horizons, filed a complaint against Leissner, Lee, and others, asserting 22 causes of action, of which only five are at issue on appeal.

The fifth and seventh causes of action for fraudulent concealment against Lee and Leissner alleged that Nu Horizons and Simmons were harmed by Lee's and Leissner's May 21, 2018 "wrongful concealment of and failure to disclose material facts and information" that 3,972,659 Celsius shares were wrongfully transferred from Nu Horizons to Lee/Leissner "without Simmons's knowledge or approval and without consideration." Lee and Leissner also "wrongfully concealed and failed to disclose to Simmons that ownership of [Nu Horizons] itself—including Simmons's ownership interest—was improperly and secretly transferred." Because Leissner is a manager and member of Nu Horizons via his alter-ego vehicle Cuscaden, and because Lee is Leissner's wife, Simmons's ex-wife and mother of his children,

---

[2]   We grant appellants' joint request for judicial notice filed April 25, 2023 as it relates to exhibit no. 5 (Celsius's Schedule 13G filed with the SEC on May 21, 2018). (Evid. Code, §§ 452, subd. (h) & 459, subd. (a).) The request is denied as to the other exhibits. We also deny appellants' joint request for judicial notice filed August 4, 2023.

5

and a member of Nu Horizons's investment board, Leissner and Lee had a fiduciary "duty to disclose" this transaction "in their capacity as business partners with and close personal confidants" of Nu Horizons and Simmons. Leissner and Lee "intentionally failed to disclose" and "intentionally prevented" discovery of the transfer of the Celsius shares because they were "aware that [Nu Horizons] and Simmons would not consent and would prevent the transfer of the shares if they had knowledge of the wrongful intent to do so."

The sixth and eighth causes of action for aiding and abetting fraudulent concealment against Lee alleged in the alternative that if Lee is not "held directly liable" to Nu Horizons and Simmons for fraudulent concealment and failure to disclose the wrongful transfer of Celsius shares, she is "liable for aiding and abetting that wrongful concealment and failure to disclose." Lee knew that Leissner "intended to and did wrongfully and secretly transfer . . . the Celsius shares . . . and gave substantial assistance and encouragement to Leissner in his wrongful concealment of the same, including by secreting accepting possession, custody, dominion, control and/or ownership of those Celsius shares and/or [Nu Horizons's and Simmons's] interests."

The 20th cause of action for breach of confidential relations/constructive fraud against Lee by Simmons individually alleged Simmons "justifiably and reasonably placed his trust and confidence in Lee's integrity and fidelity, creating a confidential relationship between the two." Lee breached her confidential relationship with Simmons when she transferred and exercised control of the Celsius shares and/or interests in Nu Horizons to herself and her husband Leissner without consideration and without Simmons's knowledge or consent (in violation of the

6

operating agreement). Lee's breach constituted "a constructive fraud in that it gained an advantage to Lee by misleading Simmons to [his] prejudice."

III. ***The Letters***

As to the activity purportedly protected by the anti-SLAPP statute, the complaint alleged the following:

On May 21, 2018, Lee and Leissner engaged, conspired and/or aided and abetted in a fraudulent transaction by which they purported to cause the unlawful transfer of Nu Horizons's and Simmons's interests in Celsius shares to themselves without consideration or consent.

"Knowing full well that criminal acts require the burden of proving *mens rea*, [Leissner and Lee] *decided to create a new spin for the conspiracy and fraud they had effectuated*. Therefore, by a document purported to be dated June 26, 2018 and written on [Nu Horizons'] letterhead, [Lee and Leissner] conspired with each other and wrote, **and together signed**, a letter stating as follows:

" 'TO WHOM IT MAY CONCERN:

" 'The undersigned, [Leissner], as Manager of [Nu Horizons], and [Lee], in her personal capacity, confirm that 3,972,659 million shares in [Celsius] have been *temporarily loaned to [Lee] for purposes of the bond in connection with Federal Case 1:18-cr-00439 and will be returned when such collateral is no longer required.*' " (Second and third italics added.) We refer to this document as the June 26, 2018 letter.

By yet another document, purportedly dated February 5, 2020, Lee and Leissner "continued with their cover-up, by continuing to try and convert this unlawful fraud, conversion and

7

breach of fiduciary duty into some innocent 'loan,' and thus wrote and signed another letter as follows:

" 'TO WHOM IT MAY CONCERN:

" '[Leissner], as Manager of [Nu Horizons], confirm[s] that [Simmons] is the beneficial owner of 49% of the 3.9 million shares that Nu Horizons acquired in 2015 net of any capital contributions made by other Members of Nu Horizons, in accordance with the Operating Agreement dated January 1, 2016.  I further confirm that these shares have been temporarily loaned to [Lee] for the purposes of the bond in connection with Federal Case 1:18-cr-00439 and will be returned when such collateral is no longer required.' "  We refer to this letter as the February 5, 2020 letter.

According to the complaint, these two letters "do not reflect any legitimate loans but rather *are further evidence of [Lee and Leissner's] fraudulent scheme . . .* by which they converted and misappropriated assets from both Simmons and [Nu Horizons]." (Italics added.)

IV.   *Special Motions to Strike the Complaint*

Lee and Leissner filed parallel special motions to strike Simmons's complaint as a strategic lawsuit against public participation under the anti-SLAPP statute, Code of Civil Procedure section 425.16.[3]  Both special motions to strike principally attack the complaint's allegations about the letters under the same legal theories.

---

[3]    Undesignated statutory references are to the Code of Civil Procedure.

On November 24, 2021, Simmons filed his opposition to Lee's special motion to strike. On May 13, 2022, he filed his opposition to Leissner's special motion to strike.

V.     ***Trial Court's Ruling***

The hearings on the two special motions to strike took place on January 10, 2022, February 24, 2022, and May 26, 2022.

Of note, Simmons argued during the hearings: "[T]he distinction that [Lee's] counsel is attempting to draw between concealment and nondisclosure, I would submit is illusionary . . . . [¶] The act that underlies the claims that are at issue on this motion was the failure to disclose. Perhaps we have used concealment and nondisclosure synonymously in the complaint, but it's very clear that that is the act that underlies the claims that are at issue on this motion. And the letters, which are not referenced in the claims themselves are . . . evidence of the facts of that [non]disclosure, but they're not the act itself, which is the failure to disclosure where there was a duty to do so." [¶] . . . "[T]he letters do not form the substance or basis of the claims at issue. They are not referenced in the claims at issue. [¶] And throughout counsel's papers . . . , the attempt to draw some distinction between concealment and nondisclosure and somehow loop the letters in as an essential element, or even any element to the claims themselves, I would say is . . . baseless and doesn't really go anywhere." "[T]he description of the letters is that these are a cover up of a fraud that already occurred. [¶] I'll also note that the idea here seems a little absurd to me, that somebody could commit a fraud and then engage in some form of speech about the fraud, and turn that claim for fraud into a SLAPP-able claim merely by having spoken about it after the fact. [¶] What we've showed on here is a fraud that already existed at the time

9

these letters occurred, which is why . . . the letter[s] [are] not referenced in or necessary to the claims themselves. [¶] They are evidence, and we did plead them as evidence, of the effort to cover up the fraud that had already occurred." "[W]e have made it very clear in our papers that the act sued upon is the transfer of the shares that was not disclosed." "So to the extent that counsel is worried that somehow [we will sue on the letters] at some later point, they can claim that we are judicially estopped from taking that position."

After lengthy argument and supplemental briefing, the trial court denied both special motions to strike on May 26, 2022.

Lee and Leissner timely appealed.

## DISCUSSION

### I.    *Standard of Review*

We review a trial court's ruling on a special motion to strike pursuant to section 425.16 under the de novo standard. (*Li v. Jenkins* (2023) 95 Cal.App.5th 493, 499; *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) "In other words, we employ the same two-pronged procedure as the trial court in determining whether the anti-SLAPP motion was properly granted." (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1652.)

In making our determination, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) In considering the pleadings and declarations, we do not make credibility determinations or compare the weight of the evidence; instead, we accept the opposing party's evidence as true and

10

evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

## II. *The Anti-SLAPP Statute*

Section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)  An " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' " is defined in section 425.16 to include: (1) "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law"; (2) "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law"; 3) "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," or; 4) "any other conduct in furtherance of the exercise of the constitutional right of petition or . . . free speech in connection with a public issue or an issue of public interest."  (*Id.*, subd. (e).)

The Legislature enacted section 425.16 to prevent and deter "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  (§ 425.16, subd. (a).)  The purpose of the anti-SLAPP law is "not [to] insulate defendants from *any* liability

for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) To accomplish this purpose, the Legislature expressly specifies the statute "be construed broadly." (§ 425.16, subd. (a).)

When a party moves to strike a cause of action under the anti-SLAPP law, a trial court evaluates the special motion to strike using a two-prong test: (1) has the moving party "made a threshold showing that the challenged cause of action arises from protected activity" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056); and if it has, (2) has the non-moving party demonstrated that the challenged cause of action has "minimal merit" by making "a prima facie factual showing sufficient to sustain" a judgment in its favor. (*Baral*, *supra*, 1 Cal.5th at pp. 384–385; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 93–94; see also § 425.16, subd. (b)(1)). After the first prong is satisfied by the moving party, "the burden [then] shifts to the [non-moving party] to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral*, at p. 396.)

## III. *Prong 1: The Claims Do Not Arise from Protected Activity*

The sole inquiry under the first prong of the anti-SLAPP statute is whether the plaintiff's claims arise from protected speech or petitioning activity. (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490 (*Castleman*).)

Lee and Leissner contend Simmons's fraud claims are "mixed causes of action containing claims for fraudulent nondisclosure and claims for fraudulent concealment, and that

12

the fraudulent concealment arises out of allegations that [appellants] wrote two letters concerning the bond issue under consideration in the 1MDB Matter to 'cover their tracks.' " They argue Simmons's claims "alleg[ed] that [appellants] prevented him from discovering the stock transfer by using the two letters to falsely characterize the transfer as a legitimate loan." They argue Simmons's claims based upon those letters is protected conduct, triggering the application of the anti-SLAPP statute. They contend the discussion and holdings in *Baral, Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995 (*Bonni*), and *Musero v. Creative Artists Agency, LLC* (2021) 72 Cal.App.5th 802 (*Musero*) require us to "strike the concealment fraud claims to the extent they relate in any way to [the] speech conduct in creating the [two] letters."

We conduct our review de novo.

"At this first step, courts are to 'consider the elements of the challenged claim and what actions by the [appellants] supply those elements and consequently form the basis for liability.' " (*Bonni, supra*, 11 Cal.5th at p. 1009.) Appellants' burden is to identify "what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Ibid*.) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra*, 2 Cal.5th at p. 1062.) Phrased another way, the relevant question for anti-SLAPP purposes is whether the core injury-producing conduct upon which the claim is premised arises out of protected activity. (*Starr v. Ashbrook* (2023) 87 Cal.App.5th 999, 1020; *Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 594 (*Area 51*).) We review the parties' pleadings, declarations, and other supporting

13

documents at this stage of the analysis "only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.' " (*Castleman*, *supra*, 216 Cal.App.4th at p. 491.)

"As with all fraud claims, the necessary elements of a concealment/suppression claim consist of ' "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." ' " (*Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1185–1186.)

It is evident on the face of the complaint that Simmons's fraud claims are not mixed[4], meaning they do not arise from two separate incidents of nondisclosure and concealment. Moreover, the three cases relied upon by appellants (*Baral*, *Bonni*, and *Musero*) do not support their argument and interpretation of the causes of action under review.

The complaint provides the fraud claims arise from the "fraudulent transaction by which [appellants] purported to cause . . . the unlawful transfer of . . . [Nu Horizons's] and/or Simmons's interests in Celsius shares to [themselves] without consideration [to] or the consent [by Simmons]" to satisfy Leissner's bail and victim compensation obligations in connection with the 1MDB federal case. The complaint specifies that appellants "entered

---

[4]    An anti-SLAPP motion can be brought in response to a "mixed cause of action"—that is, a cause of action that rests on allegations of multiple acts, some of which constitute protected activity and some of which do not. (*Bonni*, *supra*, 11 Cal.5th at p. 1010; see also *Baral*, *supra*, 1 Cal.5th at p. 393.)

14

into an unlawful agreement [on May 21, 2018], reported on a SEC Schedule 13G for Celsius, [which reflected] a series of transactions unknown to, and not consented by Simmons, either in his individual capacity or as Manager of [Nu Horizons]." The complaint also specifies that the transactions were fraudulent and unlawful because appellants "had no right, without first obtaining the approval of [Simmons] (and which approval was neither sought nor obtained) to make any transfer, loan, sale, hypothecation, encumbrance, or assignment, of any assets of [Nu Horizons]" pursuant to the operating agreement. It is appellants' failure to disclose to or notify Simmons of their transaction/transfer of Celsius shares that is the issue, not the two letters written after-the-fact.

The June 26, 2018 and February 5, 2020 letters written by appellants do not form the bases of Simmons's fraud claims; rather they are evidence in support of his fraud claims. While Simmons's complaint quotes and describes the two letters written by appellants after their fraudulent transfer of shares, the complaint expressly describes the two letters as "*further evidence of* [appellants'] *fraudulent scheme*" and that the letters added "a new spin" on the fraud that was already committed. Courts have noted that "[t]here is a 'distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim.' " (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 776.) "A 'claim may be struck *only if the speech or petitioning activity itself is the wrong complained of, and not just evidence of liability* or a step leading to some different act for which liability is asserted.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884, italics added;

*Musero, supra,* 72 Cal.App.5th at p. 815; *Park, supra,* 2 Cal.5th at p. 1060; *Bonni, supra,* 11 Cal.5th at p. 1014.) Furthermore, the allegations in the complaint differentiate the letters from the fraudulent transfer/act itself—"[appellants] decided to create a new spin for the *conspiracy and fraud they had committed*" via the June 26, 2018 letter and "continu[ed] to *try and convert this unlawful fraud, conversion and breach of fiduciary duty* into some innocent 'loan' " via the February 5, 2020 letter. (Italics added.)

The two letters are not specified in the five causes of action themselves, but rather, are included in the "Facts Common to All Claims" section, the entirety of which is incorporated by reference into the enumerated causes of action. The five causes of action each specify and refer to the underlying wrong complained of, i.e., appellants' fraudulent transfer of Celsius shares and failure to disclose the transfer. Conversely, the causes of action do not specify or identify appellants' letters as the underlying bases of the fraud claims.

Lee and Leissner argue that even though the two letters are not specified in the five causes of action themselves, because they are incorporated by reference, we are to interpret the causes of action as including that allegation and read the term "concealment" as impliedly referring to the two letters. Relying on *Baral,* appellants argue we must disregard the unprotected activity, i.e., the nondisclosure of the fraudulent transfer, and move forward to the second prong of the anti-SLAPP analysis due to the "concealment" of the fraudulent transfer via the two letters. (See *Baral, supra,* 1 Cal.5th at p. 396 ["At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief

16

supported by them.  When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage.  If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached."].)

Appellants' argument is a stretch.  Relief is not sought because of any "concealment" accomplished by the two letters.  In fact, the letters are not "concealing" the fraudulent transfer of the Celsius shares from Simmons in any way; they actually disclose that the transfer of shares took place.  More specifically, the letters provide information about Leissner's and Lee's states of mind as to the purpose of the transfer—"for the purposes of the bond in connection with Federal Case 1:18-cr-00439 and will be returned when such collateral is no longer required."  The allegations regarding the protected activity, here—the two letters—are "merely incidental" to the unprotected causes of action.  (*Area 51*, *supra*, 20 Cal.App.5th at pp. 594–601; *Baral*, *supra*, 1 Cal.5th at p. 394; *Bonni*, *supra*, 11 Cal.5th at p. 1012.) The California Supreme Court has confirmed that "[a]ssertions that are 'merely incidental' or 'collateral' are not subject to section 425.16."  (*Baral*, at p. 394.)  Courts should not simply parse a complaint claim-by-claim under the anti-SLAPP statute; instead, courts must analyze each element of the claim to see if it is based on protected activity; those allegations based on protected activity may be stricken.  (*Bonni*, at pp. 1009–1012; *Musero*, *supra*, 72 Cal.App.5th at p. 819.)

Nowhere in the complaint does Simmons allege that the two letters were sent to him or received by him, nor does the complaint allege that the two letters actually concealed the fraudulent transfer of Celsius shares from him.  In fact, the

17

allegations in the complaint provide that Simmons discovered appellants' fraudulent transfer of Celsius shares independently in July 2019 when his accountants conducted a review of tax documents related to Celsius dated December 31, 2018. The complaint also alleges that Simmons was aware of the fraudulent transfer of shares in July 2019 and reached out to appellants "in an effort to avoid this very litigation by amicable non-litigious means" since then, which is seven months before the second letter dated February 5, 2020 was even written.

Because the fraud claims are based upon appellants' fraudulent transfer of the Celsius shares without notifying Simmons and are not based upon appellants' alleged protected activity of writing the two letters, Simmons's claims do not arise from protected conduct.

We conclude appellants have not made the threshold showing that the fifth, sixth, seventh, eighth, and 20th causes of action in Simmons's complaint arise from protected activity within the meaning of the anti-SLAPP statute. We affirm the trial court's orders denying Lee's and Leissner's anti-SLAPP motions without considering whether Simmons would prevail on the merits of his causes of action. (*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119.)

## DISPOSITION

The trial court's order denying appellant Lee's anti-SLAPP motion as to the fifth, sixth, seventh, eighth, and 20th causes of action in the complaint is affirmed.  The trial court's order denying appellant Leissner's anti-SLAPP motion as to the fifth and seventh causes of action in the complaint is affirmed.

Respondent Simmons shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.