Filed 9/8/25  Webb v. Alexander CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DENISE WEBB, | D084242 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2023-00044600-CU-HR-CTL) |
| PAUL ALEXANDER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Peter Murray, Judge.  Affirmed.  Request for judicial notice denied.

Briggs Law Corporation and Cory J. Briggs for Defendant and Appellant.

Peterson Law, Christopher L. Peterson, Michael M. Baker and Megan V. Baja for Plaintiff and Respondent.

INTRODUCTION

This case involves a petition for civil harassment restraining order (Code Civ. Proc.,[1] § 527.6) that Denise Webb filed against Paul Alexander.

_____

[1]     Further unspecified statutory references are to the Code of Civil Procedure.

Following the evidentiary hearing on the petition, Alexander filed an anti-SLAPP[2] special motion to strike the petition pursuant to section 425.16.  The trial court denied his motion, and Alexander contends this was error.  We disagree with him, and so we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Restraining Order Proceedings*

On October 16, 2023, Webb filed her petition against Alexander using the standard Judicial Council CH-100 form.[3]  She asserted that he was a former tenant who had been involved with her in other court cases.  She sought protection for herself as well as several family members, stating she "fear[ed] for their safety."

In two attachments, Webb described how Alexander had harassed her.  In the first attachment, she stated:  "Paul Alexander is the CEO of Pillars of the Community.  He is aware of the threatening & misconduct of his employees and is encouraging it instead of telling them to leave us alone.  His parolees keep vandalizing my building, breaking windows, [b]reaking my cameras, gra[ffiti] my building in retaliation of the eviction paperwork I filed."

In the second attachment, she set forth the following six paragraphs:  "By way of history I purchased a property in July of 2021.  Mr. Paul Alexander and La[i]la Azziz of the Pillars of the Community program were

---

[2]     SLAPP is an acronym that stands for strategic lawsuit against public participation.

[3]     Webb represented herself throughout the restraining order proceedings, but she retained counsel to represent her after Alexander filed his anti-SLAPP motion.

2

tenants in the building I purchased.  Upon taking over this building there were items in the lease that the parties were not following, as a result I filed to have their tenancy terminated.  Subsequently they countersued personally and thus began the harassment.  The original lawsuit was granted . . . .  I appealed this decision because I was never properly served.

"As a business owner I have an address that is listed as my agency of service.  Based on their initial service of their lawsuit being served at the incorrect address, it was subsequently thrown out in court.  Now they have filed a second lawsuit and in 'attempt to serve me' are going to all of my listed properties, despite being provided with my service address at the last court hearing.

"On Monday October 2, 2023 Mr. Alexander and his attorney Cory Briggs[ ] sent a very aggressive man from their program[ ] to one of my rental properties.  Despite being given my address of service, this gentleman knocked on the front door of my tenant and demanded information.  He asked her did I live there, did she know where I lived, and where did she send her rental payments to, what is her relationship to me.  Frightened by this complete stranger on her door step, she called her son who verbally demanded this person leave.  My tenant called me very shaken up and scared by this harassment.

"On October 4, 2023 at a different rental property two gentlemen approached a different tenant and began to harass him with the same questions regarding my address, where he sent his rental payments to[ ], and any information he could provide as to my whereabouts.

"I am a single woman with multiple properties[;] Pillars of the Community is a program created for ex-prisoners, gang members and former drug addicts.  I believe Mr. Alexander and his staff listed above is sending

3

these men in their program to harass my tenants, as well as [in] an attempt to scare me into dropping the lawsuit.  There have been multiple acts of vandalism to my properties[,] broken windows, unlawful loitering on the premises.

"As such I am requesting an Order of Protection from Mr. Paul Alexander, La[i]la Azziz, and any other person employed or associated with the Pillars of the Community."

The trial court issued a temporary restraining order pending a hearing on the petition.  The hearing, which was unreported, went forward on December 5, 2023, before Judge James A. Mangione.  Webb was unrepresented; Alexander was represented by attorney Cory Briggs.  Webb and Alexander testified, as did several other witnesses.  After considering the parties' presentations, the court found Webb failed to prove her case by clear and convincing evidence.  It dissolved the temporary restraining order, denied Webb's request for injunction, and ordered that any costs or attorney fees would be subject to further motion.

## II.

### Anti-SLAPP Proceedings

A.   *Alexander's Motion*

On December 11, 2023, Alexander filed an ex parte application for permission to schedule an anti-SLAPP motion in lieu of a motion for an award of attorney fees.  In a supporting declaration, Briggs averred that he had "e-filed" an anti-SLAPP motion "[p]*rior to*" the December 5 evidentiary hearing only to learn later that it was rejected because such motions are not permitted in restraining order cases.[4]  (Italics added.)  Briggs stated the

_____

4    Contrary to this averment, the filed and rejected anti-SLAPP motion within the record on appeal bears a December 6 file stamp that was

4

rejection was erroneous because although an application for temporary restraining order is not subject to an anti-SLAPP motion, a petition for an injunction against civil harassment is. A different judge granted the application and approved the filing of the anti-SLAPP motion.

Alexander's operative anti-SLAPP motion was then filed on December 12, 2023. The motion was labeled as a "special motion to strike petitioner's request for civil harassment restraining order." (Capitalization and boldface omitted.) In his notice of motion and five-page supporting memorandum, Alexander requested the trial court to strike Webb's petition in its entirety. He stated Webb filed her petition (which he referred to as a "lawsuit") in retaliation for a lawsuit he filed against her. He asserted her "allegations make clear that this lawsuit arose from the filing of that lawsuit and that the alleged misconduct here is protected by the litigation privilege." As background, he recited facts from the first four paragraphs of Webb's second attachment. He claimed the harassing conduct of which Webb complained were "attempts to personally serve her," and argued that "[w]ithout the allegations about [Alexander's] constitutionally protected litigation-related activities, there is nothing left" to support Webb's claim of harassment. He argued that he satisfied the first step of the anti-SLAPP analysis because his alleged conduct was protected by the litigation privilege, and asserted that at the second step, Webb would be unable to prove any likelihood of success.

---

subsequently cancelled. (Another document in the record appears to reflect that the motion was transmitted to an e-filing company on December 5 at 1:43 p.m., minutes before the restraining order hearing started, with directions to file the motion by December 6.) A superior court form indicates the motion was rejected not only because such motions are not heard in restraining order matters, but also because of flaws on the face of the motion.

In January 2024, the trial court issued a minute order continuing the hearing on Alexander's anti-SLAPP motion and soliciting supplemental briefing on several issues, including whether Alexander's anti-SLAPP motion was "still ripe for adjudication notwithstanding that the underlying case ha[d] been heard [and decided] on the merits," and if so whether the motion should be granted and the attorney fees and costs to be awarded in the event the motion was either granted or denied.

Alexander then filed a supplemental brief. Citing authorities addressing whether an anti-SLAPP motion filed *before* case dismissal is rendered moot by the subsequent dismissal, he argued the opposite sequence of events—the filing of his anti-SLAPP motion *after* the resolution of Webb's petition—did not render his motion "moot." Most of his brief, however, was devoted to advocating for attorney fees. He provided billing records from Briggs's law firm and urged the court to award fees and costs of $40,306.94, enhanced by a multiplier of 1.5, whether under the anti-SLAPP statute, section 527.6, or both.

B.      *Webb's Opposition*

Webb, now represented by counsel, filed a brief opposing the anti-SLAPP motion and addressing the issues in the minute order. She urged the trial court to deny the motion, arguing the conduct she sought to restrain was not protected activity. She claimed Alexander had relied on allegations that merely provided background and had presented her phrase, " 'attempt to serve me,' " as an admission when the "entire point" of her allegations was the harassment of her tenants and attempts to determine her home address "WERE NOT an 'attempt to serve me,' as evidenced by the fact that she puts that claim in quotes. [¶] ALEXANDER apparently missed the implied air quotes, and argues that these putative attempts to serve her were the entire

6

basis for the requested [restraining order]." She further contended the harassment underlying her petition could never arise from valid attempts at service, because under section 527.6, subdivision (b), "harassment" by definition requires a " '[c]ourse of conduct,' " and "constitutionally protected activity is not included within the meaning of 'course of conduct.' "

Webb also argued the motion was untimely as well as procedurally flawed. She asserted that Alexander had filed an " 'all-or-nothing' " anti-SLAPP motion that sought to strike her entire petition while addressing only select allegations and ignoring her claims of vandalism. She cited *Paglia & Associates Construction, Inc. v. Hamilton* (2023) 98 Cal.App.5th 318, 327 (*Paglia*), in which the Court of Appeal declined a defendant's undeveloped request to strike individual portions of a complaint as an alternative to striking an entire complaint on the ground "[a]ppellants may not enlist the court as their legal assistant to develop arguments they merely suggest." Relying on *Paglia*, she urged the court to conclude it was similarly not tasked with rooting out and striking allegations of protected speech, and argued it would violate due process for the court to do so absent notice to her. Turning to the second step, she presented a declaration and argued her petition, even if based on protected activity, had the minimal merit necessary to proceed. She also opposed any award of more than nominal costs and fees.

C. *Alexander's Reply*

Alexander filed a reply supplemental brief in which he argued "this lawsuit arose entirely from [Alexander's] protected service-of-process efforts," and even if it did not, under *Baral v. Schnitt* (2016) 1 Cal.5th 376 (*Baral*), an anti-SLAPP motion "may be directed at particular allegations within a cause of action." (Boldface and italics omitted.) He asserted that his motion could be granted whether the court viewed the allegations of his "service-of-process

7

activities as representing the gravamen of [Webb's] claims or just a portion thereof[.]"

In fulfillment of a trial court request, Alexander filed yet another brief segregating his incurred attorney fees into the following categories: (1) $20,387.50 for the anti-SLAPP motion; (2) $9,867.50 for a mixture of anti-SLAPP and petition work "in more or less equal parts"; and (3) $7,125 for work that was "[n]ot [a]nti-SLAPP."

D.    *Ruling*

On April 3, 2024, the trial court issued a minute order denying Alexander's anti-SLAPP motion and granting in part his request for attorney fees and costs.[5]  The court first ruled that the motion was "not rendered moot" by the fact the petition was dismissed at the conclusion of the evidentiary hearing.  Turning to the merits, the court found that efforts to serve process are generally a protected activity, and while there "may well be factual instances where even this generally protected activity could so exceed the bounds of proper legal process that it would lose this 'protected activity' status, . . . there was insufficient evidence in this matter to support the claim that that happened here."  The court nevertheless denied the motion.  Citing *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1011 (*Bonni*), it found Webb's petition "contained more than the single claim surrounding the service of process (i.e., vandalism, loitering, etc.)," yet Alexander's motion "sought to strike the <u>entire</u> pleading without any more specificity while addressing only the service of legal process issue."

Turning to the question of costs and attorney fees, the court found Alexander prevailed "in this matter" and exercised its discretion to award

_____

[5]    The motion was decided by Judge Peter Murray.

costs and fees. From the requested award of $40,306.94, the court subtracted $20,387.50 (the amount incurred for the anti-SLAPP motion) and $4,933.75 (50 percent of the $9,867.50 spent on a mixture of tasks). It subtracted another $2,926.94 (the total cost claim) for failure to segregate between anti-SLAPP costs and defense costs. The resulting award was $12,058.75.

## DISCUSSION

Alexander challenges the denial of his anti-SLAPP motion. He contends the trial court erred by concluding his motion was overbroad and lacked specificity. He asks us to "grant the motion[ ] and remand this matter back to the trial court for determination of the appropriate fee award." We decline this request because we conclude he fails to establish the trial court erred.[6]

---

[6] Alexander has filed a motion requesting that we take judicial notice of 28 records from superior court cases other than the one that is before us. He contends the records are relevant to this appeal because they provide "the procedural and factual background that precipitated the challenged restraining order at issue here." He admits, however, that the records to be noticed were not presented to the trial court and were not made part of the trial court record. Webb submitted a late opposition which we decline to consider because she did not show good cause for the delay. (Cal. Rules of Court, rules 8.54(a)(3) [opposition "must" be filed within 15 days of motion], 8.60(b) [good cause must be shown to excuse delay].)

As for Alexander's request for judicial notice, it is denied. Alexander correctly observes that we have discretion to take judicial notice of court records. (Evid. Code, § 452, subd. (d).) However, the court records that are the subject of his motion were not presented to the trial court. Appellate courts "generally do not take judicial notice of evidence not presented to the trial court" unless exceptional circumstances "justify deviating from that rule." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) Alexander asserts that the "lawsuits" reflected in the records were discussed during "the hearings in the instant matter." However, he does not show this qualifies as an exceptional circumstance that justifies us in taking judicial notice of new records on appeal.

# I.

## *Principles of Law*

Section 425.16, the anti-SLAPP statute, "authorizes a special motion to strike a claim 'arising from any act of [the moving party] in furtherance of [the party's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1).)" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.) "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral, supra,* 1 Cal.5th at p. 384.)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' " (*Bonni, supra,* 11 Cal.5th at p. 1009.) "The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Ibid.*) "Second, for each claim that does arise from protected activity, the plaintiff must show the claim has at least 'minimal merit.' If the plaintiff cannot make this showing, the court will strike the claim." (*Ibid.* [cleaned up].)

We review the denial of an anti-SLAPP motion de novo, using the same two-step process as the trial court. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*); *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490.) Although our standard of review is de novo, the appellant bears the burden of affirmatively demonstrating error. (*Luo v. Volokh* (2024) 102 Cal.App.5th 1312, 1322.)

## II.

### *Alexander Fails To Demonstrate Error*

It is apparent from the progression of the parties' briefs to the ruling on the anti-SLAPP motion that the trial court was persuaded by Webb's contention Alexander failed to meet his burden because he filed an overly broad "all-or-nothing" motion that sought to strike her entire petition while neglecting to address all allegations in the petition.

Alexander contends the trial court's ruling was erroneous for several reasons, including that it was inconsistent with case law in mixed cause of action cases.[7] We disagree. As we will explain, the ruling was not only consistent with but was directedly supported by *Baral*, *Bonni*, and subsequent cases like *Paglia*, on which Webb's opposition argument relied. *Paglia* is one of several recent published cases holding that a court may properly decline to provide the analysis necessary to support striking individual allegations or claims within a mixed cause of action when the anti-SLAPP movant has failed to do so. (*Paglia*, *supra*, 98 Cal.App.5th at p. 327; *Park v. Nazari* (2023) 93 Cal.App.5th 1099, 1107–1109 (*Nazari*); *Young v. Midland Funding LLC* (2023) 91 Cal.App.5th 63, 95–100 (*Young*); *Littlefield v. Littlefield* (2024) 106 Cal.App.5th 815, 825–827 (*Littlefield*).) These cases

---

7    " '[C]ause of action' " has different meanings depending on context. (*Baral*, *supra*, 1 Cal.5th at p. 381.) It may refer to the counts pleaded in a complaint (e.g. " 'first cause of action,' " " 'second cause of action' "). (*Ibid.*) It may also refer to an injured person's legal claim, regardless of whether a lawsuit has been filed. (*Ibid.*) Section 425.16 uses "cause of action" in a particular way to target claims based on protected activity, regardless of how the complaint is framed. (*Baral*, at p. 382.)

A pleaded count is sometimes called a " ' "mixed cause of action" ' " when it "rests on allegations of multiple acts, some of which constitute protected activity and some of which do not." (*Bonni*, *supra*, 11 Cal.5th at p. 1010.)

are based on familiar principles of forfeiture, such as "[t]he duty to present legal analysis belongs to the parties" (*Paglia*, at p. 327) and "litigants who want courts to consider something are generally expected to identify it" (*Littlefield*, at p. 826), and on the burden our Supreme Court placed on anti-SLAPP movants in *Baral* and *Bonni* to identify and analyze the allegations targeted by the motion (see *Nazari*, at pp. 1107–1108 [discussing *Baral* and *Bonni*]; *Young*, at pp. 99–100 [same]; *Littlefield*, at pp. 825–827 [same]). These cases were issued before Alexander filed his opening brief on appeal; all but *Littlefield* were issued before he filed his anti-SLAPP motion; and all of them support affirming the denial of his motion.

The forfeiture principles underlying the holdings of these cases are familiar and require no explanation. We therefore begin by briefly summarizing the recent high court decisions on which the cases are predicated. In doing so, we draw in part from *Nazari*.

In *Baral*, our high court held that "an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded." (*Baral*, *supra*, 1 Cal.5th at p. 393.) However, the movant's ability to challenge parts of a pleading comes with an attendant burden. "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." (*Id.* at p. 396.) Complying with this obligation is "crucial" "because complaints frequently include claims arising from protected activity alongside claims arising from unprotected activity, as well as 'so-called "mixed cause[s] of action" that combine[ ] allegations of activity protected by the statute with allegations of unprotected activity.' " (*Nazari*, *supra*, 93 Cal.App.5th at p. 1107, quoting *Baral*, at p. 381.)

Following *Baral*, most Courts of Appeal took "a claim-by-claim approach to the anti-SLAPP analysis, rather than attempting to evaluate a cause of action as a whole." (*Bonni, supra*, 11 Cal.5th at p. 1010.) "In *Bonni*, our Supreme Court considered the minority view that courts need not follow this approach—and may instead analyze whether the 'gravamen' of a pleaded cause of action concerns protected activity—'when a defendant has moved to strike an entire cause of action rather than individual claims within a pleaded count.' (*Id.* at p. 1011.) The court rejected this view, holding that *Baral*'s claim-by-claim analysis is required 'even though [the defendants] sought to strike [an] entire cause of action, rather than merely parts of it.' (*Ibid.*)" (*Nazari, supra*, 93 Cal.App.5th at pp. 1107–1108.)

"*Bonni* did not hold, however, that every invocation of the anti-SLAPP statute, however broad, requires plaintiffs or courts to perform the claim-by-claim analysis prescribed in *Baral*. To the contrary, *Bonni* recognizes a 'nonmovant should not be put to the burden of parsing the cause of action in the moving party's stead' and explains that 'well-established anti-SLAPP law' provides a solution when an anti-SLAPP movant seeks to impose burdens on the nonmovant or the trial court by filing an overbroad or nonspecific motion: 'attention to the allocation of the applicable burden of proof.' (*Bonni, supra*, 11 Cal.5th at p. 1011.) 'If a cause of action contains multiple claims and a moving party fails to identify how the speech or conduct underlying some of those claims is protected activity, it will not carry its first-step burden as to those claims.' (*Ibid.*)" (*Nazari, supra*, 93 Cal.App.5th at p. 1108.)

*Nazari* applied these principles from *Baral* and *Bonni* to an anti-SLAPP motion targeting a complaint asserting multiple claims based on fraudulent promissory notes underlying liens recorded against real properties. (*Nazari, supra*, 93 Cal.App.5th at pp. 1103–1104.) The

13

defendants argued in their motion that the entire complaint arose from protected litigation-related activity and should be stricken. (*Id.* at p. 1105, citing § 425.16, subd. (e)(2).) At the hearing, the defendants suggested the trial court could strike a limited set of the plaintiffs' allegations even if it did not strike the complaint in its entirety. (*Nazari*, at p. 1105.) The trial court declined the request, ruling that while courts may grant a motion to strike individual allegations of protected activity within a complaint or cause of action, no authority requires such an analysis " 'where the movant has taken the position that the entire complaint arises from protected activity and requests that the entire complaint be stricken.' " (*Id.* at p. 1106.) The trial court emphasized the burden is on anti-SLAPP movants to undertake the analysis required to support striking individual allegations, and courts have no " 'freestanding obligation . . . to cure defects in an overbroad motion.' " (*Ibid.*)

The Court of Appeal held the trial court's approach to the anti-SLAPP motion was correct. (*Nazari*, *supra*, 93 Cal.App.5th at p. 1106.) It explained the Supreme Court's guidance in *Baral* and *Bonni* demonstrates that "while courts may strike less than the entirety of a complaint or pleaded cause of action, the trial court is not required to take on the burden of identifying the allegations susceptible to a special motion to strike. If a defendant wants the trial court to take a surgical approach, whether in the alternative or not, the defendant must propose where to make the incisions." (*Nazari*, at p. 1109.) This requires, at a minimum, that the defendant identify in the initial motion each challenged claim, and explain " 'the claim's elements, the actions alleged to establish those elements, and wh[y] those actions are protected.' " (*Ibid.*) "Because [the defendants] moved to strike only the entire complaint, and did not identify in their motion individual claims or allegations that should be

14

stricken even if the entire complaint were not, the trial court was permitted to deny the anti-SLAPP motion once it concluded—correctly—that the complaint presented at least one claim that did not arise from anti-SLAPP protected conduct." (*Id.* at p. 1106.)

A similar conclusion was reached in *Young*. There, the defendants had filed an anti-SLAPP motion challenging all of a plaintiff's causes of action. They briefly noted the right to challenge specific allegations within a cause of action but did not directly request the striking of specific allegations in the motion itself. (*Young, supra,* 91 Cal.App.5th at p. 72.) After the trial court granted the motion, the Court of Appeal reversed on the ground the plaintiff established her causes of action had minimal merit. Defendants argued in their respondents' brief that certain " 'derivative claims' " alleged by the plaintiff did not have minimal merit and should be analyzed separately. (*Id.* at pp. 95–96.) The appellate court disagreed. It observed that under *Bonni,* " '[t]he nonmovant is not faced with the burden of having to make the moving party's case for it,' " and added, "on appeal, the reviewing court should not be put to that burden either." (*Young,* at p. 100, quoting *Bonni, supra,* 11 Cal.5th at p. 1011.) The defendants had failed to carry their moving burden, including because they "failed to dissect each of the . . . legal theories presented, element-by-element" and establish how the derivative claims met the required elements. (*Young,* at p. 97.) Their appellate briefing was also deficient because their request to strike the subset of derivative claims was "highly general" and directed at "all 'derivative claims' as an aggregate." (*Id.* at p. 100.) "Thus, whether we describe what we have here as a failure to meet the initial first-step burden or a forfeiture on appeal, the [defendants'] . . . request has not been properly framed." (*Ibid.*; see *ibid.,* fn. 15 [describing

15

the steps an anti-SLAPP movant should take to present a *Baral*-style challenge properly].)

In *Littlefield*, the defendants filed an anti-SLAPP motion to strike a petition with three causes of action, each predicated on factual allegations asserting the breach of cotrustees' obligations. (*Littlefield*, *supra*, 106 Cal.App.5th at pp. 819–822.) In their motion, the defendants sought to strike the entire petition, or alternatively "all causes of action and the prayer for relief." (*Id.* at p. 822.) However, within their motion they only addressed a subset of purportedly protected allegations relating to a request for injunction. (*Ibid.*) The trial court denied the motion on the ground the defendants failed to address all allegations of protected activity relevant to the request for injunction, and failed to identify the elements of that claim or the actions supplying each element. (*Id.* at p. 823.) The Court of Appeal affirmed, holding *Nazari* and *Young* "control the outcome here." (*Littlefield*, at p. 827.) "Although [defendants] moved 'in the alternative' to strike all causes of action in their entirety, they did not show that the petition or any cause of action asserted in it was based solely on protected activity, and they did not identify individual allegations or claims that they believed should be stricken even if the petition or entire causes of action were not." (*Ibid.*)

Finally, as for *Paglia*, there the defendant filed an anti-SLAPP motion that asked the court to strike the entire complaint but "did not ask the court to strike particular parts." (*Paglia*, *supra*, 98 Cal.App.5th at p. 322.) On appeal, the court declined to grant an alternative request to strike portions of the complaint. (*Id.* at p. 327.) The defendant's appellate brief listed 22 alleged defamatory statements but did not supply legal arguments, authorities, facts, or record citations for each statement. This was

16

insufficient because "[a]ppellants may not enlist the court as their legal assistant to develop arguments they merely suggest." (*Ibid.*)

Turning back to this case, on our independent review of Alexander's anti-SLAPP motion, we find it has the same deficiencies as the motions in the foregoing cases. Although Webb's petition at best stated only a mixed cause of action, Alexander did not seek to strike only the allegations that were assertedly protected. Instead, he stated in his notice of motion and in his motion that he sought to strike the petition in its entirety. The proposed order he provided to the trial court stated, "the special motion to strike Petitioner's *operative pleading* is granted." (Italics added.) Yet within his motion, he addressed only a subset of Webb's allegations, characterizing them as describing legitimate, protected attempts to serve her with process, while ignoring her allegations of loitering, vandalism, "breaking windows, [b]reaking my cameras, [and] gra[ffitiing] my building"—activities that could not possibly be protected. As in *Young*, Alexander briefly noted the right to challenge specific allegations within a cause of action but did not directly request the striking of specific allegations. (*Young*, *supra*, 91 Cal.App.5th at p. 72.) Nor did he identify allegations to be stricken in the event the trial court declined to strike the entire petition, or dissect, element-by-element, how Webb's legal theory of harassment arose from them.[8] (*Id.* at p. 97.)

_____

[8] The elements of unlawful harassment, as defined by section 527.6, are "(1) a knowing and willful *course of conduct* (2) directed at a specific person; (3) which seriously alarms, annoys, or harasses the person; (4) which serves no legitimate purpose; (5) which would cause a reasonable person to suffer substantial emotional distress and actually causes substantial emotional distress to the plaintiff; and (6) *which is not a constitutionally protected activity*." (*E.G. v. M.L.* (2024) 105 Cal.App.5th 688, 699, italics added.) Within the factual and procedural background section of his motion, Alexander made a passing reference to the first, second, and fourth elements, but only as part of a broad, descriptive assertion that without the allegations

17

Given the manner in which Alexander framed and argued his motion, we agree with the trial court that he failed to carry his burden as an anti-SLAPP movant. Alexander moved to strike the entire petition but "did not show that the petition . . . was based solely on protected activity, and [he] did not identify individual allegations or claims that [he] believed should be stricken even if the petition . . . were not." (*Littlefield*, *supra*, 106 Cal.App.5th at p. 827.) He "failed to dissect each of the . . . legal theories presented, element-by-element." (*Young*, *supra*, 91 Cal.App.5th at p. 97.) "Because [Alexander] moved to strike only the entire [petition], and did not identify in [his] motion individual claims or allegations that should be stricken even if the entire complaint were not, the trial court was permitted to deny the anti-SLAPP motion once it concluded—correctly—that the [petition] presented at least one claim that did not arise from anti-SLAPP protected conduct." (*Nazari*, *supra*, 93 Cal.App.5th at p. 1106.)

Alexander similarly fails to articulate and justify particularized relief in his appellate briefs. He contends the trial court erred because he addressed " 'the service of legal process issue' " and therefore did sufficiently identify the allegations to be stricken. (Boldface and italics omitted.) He points out that he cited *Baral* in his trial court briefs and suggests his repeated references to his " 'attempts to serve [Webb]' " should have been considered sufficient to support granting targeted relief. We disagree, for the reasons we have already discussed. We also observe that even on appeal

of protected service of process activities, there was "nothing left" in the petition to establish these elements of harassment. He did not acknowledge any of the remaining requirements for a claim of unlawful harassment, including that the statutory definition of " '[c]ourse of conduct' " excludes constitutionally protected activity (§ 527.6, subd. (b)(1)), and he did not address whether legitimate efforts to serve process could satisfy this element so as to support a claim of harassment.

Alexander never directly states which specific text should have been stricken from the petition and does not analyze how any particular allegation satisfied the elements of a claim for injunctive relief. He concludes his opening brief by asking us to simply "grant the motion" and remand for the trial court to determine an appropriate fee award. Setting aside that this request is misplaced because an appellate court reviews, rather than issues, rulings on trial court motions, these aspects of the briefs suggest Alexander's goal is simply to get the anti-SLAPP motion granted—*whatever that might entail in the mind of the court*—so he can have the chance to obtain the attorney fees available for prevailing on an anti-SLAPP motion.

The problem with this approach, of course, is that the burden is on the anti-SLAPP movant, not this court, to provide the analysis necessary to grant relief. (*Bonni, supra*, 11 Cal.5th at p. 1011; *Young, supra*, 91 Cal.App.5th at p. 100; *Paglia, supra*, 98 Cal.App.5th at p. 327.) Even if we could surmise on our own which allegations Alexander probably believes should be stricken and how they "probably align, element-by-element, with the legal theories [Webb was] pursuing, . . . we have no obligation to do so on appeal." (*Young*, at p. 98.) Alexander filed his anti-SLAPP motion long after *Baral* was issued, yet he did not move for particularized relief, provide the developed arguments required to justify particularized relief, and cannot now be heard to complain he should have received particularized relief. In short, his arguments are deficient "whether we describe what we have here as a failure to meet the initial first-step burden or a forfeiture on appeal." (*Young*, at p. 100.)

Moreover, even if not forfeited, Alexander's appellate arguments lack merit. He asserts that under *Baral* " '**unprotected activity is disregarded**' " at the first step (see *Baral, supra*, 1 Cal.5th at p. 396), and suggests the trial court violated this rule by considering at the first step that

19

Webb's petition included allegations of unprotected activity his motion failed to address. Alexander's reliance on this aspect of *Baral* is misplaced. Although he is correct that *Baral* stated "unprotected activity is disregarded" at the first step of the anti-SLAPP procedure (*ibid*), he is incorrect insofar as he interprets this to mean courts must ignore allegations of unprotected activity when determining whether the movant is justified in seeking to have all of the plaintiff's allegations stricken. *Baral* dealt with the opposite scenario from the one we have here: an anti-SLAPP motion that sought to strike specific allegations from a complaint, and a ruling holding the motion was not broad enough because it did not seek to strike an entire cause of action or the complaint as a whole. (*Id.* at p. 384.) *Baral* does not stand for the proposition that a trial court errs by considering at the first step whether an anti-SLAPP motion directed at an entire pleading is overly broad because the pleading alleges both protected and unprotected activities. (See *American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1039 [cases are not authority for propositions not considered].)

Alexander also notes that in *Navellier v. Sletten* (2002) 29 Cal.4th 82, 92, our high court stated, "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." He relies on this statement to quarrel with Webb's contention that the trial court could properly consider whether all allegations in her petition constituted protected activity. His point appears to be that the trial court should have considered activities and not allegations. Setting aside that he overreads *Navellier*, the trial court did this. It found the petition described unprotected activity (loitering and vandalism) that Alexander did not acknowledge or address, and reasoned the

motion was therefore overbroad because it did not seek to carve out only the protected activity.

Next, Alexander asserts that in an anti-SLAPP motion, "The essential inquiry is . . . whether, but-for the anti-SLAPP movant's prior litigation, would there have been a factual or legal scenario giving rise to a subsequent lawsuit." He identifies *Park*, *supra*, 2 Cal.5th at page 1064, as the source of this rule. He then argues at length that the trial court should therefore have granted his motion because "without the prior litigation history" between the parties, "there would be no claims by respondent." Alexander's argument fails at the outset, however, because his purported rule badly misstates the holding of *Park*. *Park* addressed the nexus that must exist "between a challenged claim and the defendant's protected activity for the claim to be struck." (*Park*, at p. 1060.) It held that "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Ibid.*) Alexander's purported rule, and the arguments that stem from it, assume incorrectly that the opposite is true.

Finally, Alexander appears to contend that Webb, by defending the trial court's ruling, is adopting the gravamen approach rejected in *Bonni*. We disagree. Under the gravamen approach, a court issues an up-or-down ruling on a challenge to a mixed cause of action based on the court's view of the cause of action's " 'essence.' " (*Bonni, supra*, 11 Cal.5th at p. 1011.) Webb has not advocated such an approach. Instead, she argues in her respondent's brief that "[w]hen an anti-SLAPP motion is directed at an entire claim, the burden is on the party making an anti-SLAPP motion to demonstrate that each factual allegation that supports the claim constitutes protected activity."

21

For all the reasons we have discussed, Alexander fails to show this position is incorrect.

## DISPOSITION

The trial court's denial of the anti-SLAPP motion is affirmed. Webb is entitled to recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


DO, J.

WE CONCUR:


IRION, Acting P. J.


CASTILLO, J.

22