Filed 9/22/25  Rambunctious Ventures v. J.W. Financial Solutions CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RAMBUNCTIOUS VENTURES, LLC et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> J.W. FINANCIAL SOLUTIONS, INC. et al., <br><br> Defendants and Appellants. | G064578 <br><br> (Super. Ct. No. 30-2023-01368439) <br><br> O P I N I O N |

Appeal from a prejudgment order of the Superior Court of Orange County, Erick L. Larsh, Judge. Affirmed.

Reinhardt Savic Foley, Stefan Savic, Law Office of Sheila Mojtehedi, Sheila Mojtehedi for Defendants and Appellants.

Talg, Ismail Amin, Katherine J. Vescera, Cassidy R. Kitterman for Plaintiffs and Respondents.

*     *     *

Respondents Rambunctious Ventures, LLC and Robert Ainsworth (collectively, Rambunctious) filed a complaint alleging numerous causes of action against Defendants and Appellants J.W. Financial Solutions, Inc., J.W. FS LLC, and W. Joseph Mashini (collectively, J.W. Financial), whose businesses offer consumer debt relief solutions. The bases of the lawsuit were claims by Freedom Legal Plan, LLC (FLP)[1] that J.W. Financial had damaged FLP by making disparaging statements to third parties regarding FLP's legal services, which J.W. Financial had contracted to recommend to its debt relief clients.

J.W. Financial filed a special motion to strike claims and allegations of the complaint, pursuant to Code of Civil Procedure[2] section 425.16 (the "anti-SLAPP" motion). J.W. Financial argued the statements it made regarding FLP were issues of public interest, particularly regarding regulation of the debt settlement industry. The trial court denied the anti-SLAPP motion, concluding the purpose of the speech was in connection with a private contract dispute and was not a matter of public interest. J.W. Financial appeals the denial of its motion. We conclude the court correctly denied the anti-SLAPP motion and affirm the prejudgment order.

_____

[1] FLP entered into an asset purchase agreement in 2022 in which it sold all of its assets, including its interest in the instant suit, to Rambunctious.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise stated

2

## FACTS

Before FLP ceased operations in 2022, it offered a member benefits plan which included prepaid legal services to defend consumers in suits brought by a creditor or debt collector (the FLP Plan). FLP and J.W. Financial entered into an oral agreement in which J.W. Financial agreed to offer the FLP Plan to J.W. Financial's clients in exchange for FLP paying to J.W. Financial a portion of its enrollment fee and monthly fee charged to FLP clients. J.W. Financial used Reliant Payment, LLC and CFTPay (collectively, the Payment Processors), to process the payments by its clients for FLP's legal services.

J.W. Financial alleges it discovered that FLP was not providing legitimate legal defense services. J.W. Financial subsequently contacted the Payment Processors to make them aware of the alleged problem with FLP. The Payment Processors eventually discontinued processing any payments to FLP. In 2022, J.W. Financial terminated its relationship with FLP.

In 2023, Rambunctious filed a complaint against various parties, including J.W. Financial, alleging causes of action for breach of written contract (claim 1), three separate claims of breach of oral contract (claims 2–4), breach of the implied covenant of good faith and fair dealing (claim 5), intentional interference with contract (claim 6), intentional interference with prospective economic advantage (claim 7), conversion (claim 8), and unfair competition (claim 9).

In March 2024, J.W. Financial filed an anti-SLAPP motion, challenging claims 3, 5, 6, 7, and 9. J.W. Financial argued these causes of action arose from protected activity as defined in section 425.16, and Rambunctious could not present any admissible evidence to show a probability of success.

3

After hearing oral argument, the trial court denied the motion. The court laid out the two-part test articulated by our Supreme Court in *FilmOn.com Inc. v. Double Verify Inc.* (2019) 7 Cal.5th 133, 149-151 (*FilmOn*) to determine whether the speech was "in connection with a public issue or an issue of public interest," pursuant to section 425.1, subdivision (e)(4):

"First, the court must determine 'what public issue or . . . issue of public interest the speech in question implicates,' which is determined by 'looking to the content of the speech.' [Citation.] [¶] Second, 'a statement falls within subdivision (e)(4) [of section 425.16] if it contributes to—that is, partici[pates] in or furthers—some public conversation on the issue. [Citation.]

"'[T]his analysis must include a consideration of the context or specific circumstances in which the statement was made, including the identity of the speaker, the audience, and the purpose of the speech.' [Citation.] Here, the identity of the speaker is alleged to be [J.W. Financial], the recipients of the speech were the two [P]ayment [P]rocessors, and the purpose of the speech was in connection with a private contract dispute . . . .

"[T]he alleged communications to the [P]ayment [P]rocessors did not contribute to public debate or public conversation and there are no allegations that any member of the public received the communications, as they were sent to a limited number of business entities (2), and there was no expectation that any of the recipients would communicate . . . them to the plan members.

"Defendants fail to show that the alleged communications fell within the SLAPP statute and therefore, the burden does not shift to plaintiffs to show: (1) a legally sufficient claim; and (2) that the claim is supported by competent, admissible evidence. [Citation.]"

4

DISCUSSION

I.

THE TRIAL COURT DID NOT ERR IN DENYING THE ANTI-SLAPP MOTION

We conclude the trial court did not err in denying J.W. Financial's anti-SLAPP motion because it failed to demonstrate the statements arose from activity protected by the statute.

A. *Legal Standard*

The anti-SLAPP statute aims to shield defendants from "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) To curb such abuses of the civil justice system, "the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1)." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.) "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) The statute must "be construed broadly." (§ 425.16, subd. (a).)

Courts evaluate anti-SLAPP motions through a two-step process. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.) First, "the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) Second, if the defendant satisfies the first step,

the plaintiff must show "there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The plaintiff must establish the claim has "at least 'minimal merit.'" (*Park, supra*, 2 Cal.5th at p. 1061.)

At step one, "the critical consideration is whether the cause of action is *based* on the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) To carry its burden at step one, the moving defendant must establish "that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16].'" (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620.) The four categories of protected activity "describe conduct '"in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue."'" (*Ibid.*, quoting § 425.16, subd. (e).)

The only category relevant here is section 425.16, subdivision (e)(4), the so-called catchall provision. Section 425.16, subdivision (e)(4) protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

The catchall provision "calls for a two-part analysis." (*FilmOn, supra*, 7 Cal.5th at p. 149.) First, we examine the "content of the speech" to decide what "'issue of public interest' the speech in question implicates." (*Ibid.*) In determining what is an "issue of public interest," courts have considered various factors, including "whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large numbers of people beyond the direct participants,' . . . and whether the activity 'occur[red] in the context of an ongoing controversy, dispute or discussion,' [Citation] or 'affect[ed] a community in a manner similar to that

6

of a governmental entity.'" (*Id.* at pp. 145–146.) The first part of the analysis "is satisfied so long as the challenged speech or conduct, considered in light of its context, may reasonably be understood to implicate a public issue, even if it also implicates a private dispute." (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1253.)

Second, we look at the context of the speech. "[W]e ask what functional relationship exists between the speech and the public conversation about some matter of public interest." (*FilmOn, supra*, 7 Cal.5th at pp. 149–150.) Contextual considerations include the "audience, speaker, and purpose" of the statement. (*Id.* at p. 152.) "[T]he catchall provision demands 'some degree of closeness' between the challenged statements and the asserted public interest." (*Id.* at p. 150.) "'[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself *contribute to the public debate*.'" (*Ibid.*, italics added.) "We are not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction; rather, we examine whether a defendant—through public or private speech or conduct— participated in, or furthered, the discourse that makes an issue one of public interest." (*Id.* at p. 151.)

"We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.'" (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 491.) "By requiring that a moving defendant demonstrate that the targeted cause of action is one arising from protected speech or petitioning (§ 425.16, subd. (b)), our anti-SLAPP statute utilizes a reasonable, objective test that lends itself

7

to adjudication on pretrial motion." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 65.)

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park, supra,* 2 Cal.5th at p. 1067.) "'"Thus, we apply our independent judgment, both to the issue of whether the cause of action arises from a protected activity and whether the plaintiff has shown a probability of prevailing on the claim."'" (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.)

*B. Analysis*

As noted, the Supreme Court in *FilmOn* set out a two-part analysis for determining whether a defendant has met its burden under section 425.16, subdivision (e)(4). Consequently, J.W. Financial must demonstrate both that the content of its speech implicates an issue of public interest, and that this speech contributes to the public conversation about a matter of public interest. We conclude J.W. Financial has met the first step of the two-part test but cannot establish the second.

First, J.W. Financial argues the statements it made to the Payment Processors regarding FLP's alleged failure to provide legitimate legal services to J.W. Financial's debt relief clients implicate an issue of public interest because the debt settlement industry is highly regulated in California and is thus a matter of public importance. In support of its argument, J.W. Financial cites to California's extensive regulation of the debt settlement industry, in particular, the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.) and the California Consumer Financial Protection Law (Fin. Code § 90005, subd. (k)(8)(b)). Additionally, J.W. Financial cites a statement by California State Senator Thomas Umberg regarding the importance of providing oversight of deceptive practices by the debt settlement industry to protect vulnerable consumers. We conclude the

subject of the speech was sufficiently related to an issue of public importance, the heavily regulated debt settlement industry. As our Supreme Court noted, "virtually always, defendants succeed in drawing a line—however tenuous—connecting their speech to an abstract issue of public interest." (*FilmOn*, *supra*, 7 Cal.5th at p. 150.)

However, we conclude J.W. Financial has failed to establish, at step two, that its communications contributed to the public debate regarding the debt relief industry. Here, J.W. Financial made its statements regarding FLP's alleged fraud in failing to provide legitimate legal services, not to the public at large, but only to the Payment Processors, who used it solely for the purpose of discontinuing processing payments to FLP. There is no evidence J.W. Financial requested the Payment Processors inform the "thousands of customers who had signed up for FLP's services" that it believed FLP was not a legitimate business. Nor did J.W. Financial notify its customers directly. Just like in *FilmOn*, J.W. Financial did not provide these statements to the "wider public," but rather "privately" to the Payment Processors who "in turn, use[d] the information . . . for their business purposes alone." (*FilmOn*, *supra*, 7 Cal.5th at p. 153.) Accordingly, "[t]he information never entered the public sphere, and the parties never intended it to." (*Ibid.*)

Moreover, the statements made by J.W. Financial to the Payment Processors regarding FLP's alleged fraud were "too remotely connected to the public conversation" regarding the debt relief industry to contribute to the public dialogue. (*FilmOn*, *supra*, 7 Cal.5th at p. 140) Although J.W. Financial is a service provider in the debt relief industry, its statements to the Payment Processors were unrelated to the issue of debt relief. Rather, the statements were made for the purpose of discontinuing automatic payments to a legal

9

services provider which J.W. Financial had concluded was failing to provide a legitimate service to its clients. As the trial court properly found, the purpose of the speech was in connection with a private contract dispute. Accordingly, because the statements did not contribute to the discourse and public debate regarding the issue of debt relief or its regulation, J.W. Financial has failed to demonstrate entitlement to relief under section 425.1, subdivision (e)(4).

DISPOSITION

The prejudgment order denying the anti-SLAPP motion is affirmed. Rambunctious Ventures is entitled to its costs on appeal.

DELANEY, J.

WE CONCUR:

MOORE, ACTING P. J.

SCOTT, J.